RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0221p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 10-3642

RASHAWN GILL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:08-cr-120-1—Michael R. Barrett, District Judge.

Argued: May 31, 2012

Decided and Filed: July 17, 2012

Before: MARTIN and DAUGHTREY, Circuit Judges; MALONEY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Gregory C. Padgett, COVINGTON & BURLING, LLP, Washington, D.C., for Appellant. Christopher K. Barnes, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Gregory C. Padgett, COVINGTON & BURLING, LLP, Washington, D.C., for Appellant. Christopher K. Barnes, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Rashawn Gill was convicted by a jury of being a felon in possession of a firearm; possessing cocaine with intent to distribute; and possessing a firearm in furtherance of a drug-trafficking crime. Before trial, Gill

---

[*]The Honorable Paul L. Maloney, Chief United States District Judge for the Western District of Michigan, sitting by designation.

moved to suppress certain evidence. After his conviction, Gill moved for a judgment of acquittal on the third charge; the district court denied both of these motions. Gill appeals both denials. For the reasons that follow we AFFIRM the judgments of the district court.

I.

Following his arrest by Cincinnati, Ohio, police, William Holmes agreed to become a confidential informant and set up a drug deal to help the police arrest the person who had sold Holmes drugs. In the presence of officers, Holmes telephoned a man he identified as Rashawn Gill. In that call, Holmes arranged to buy five ounces of cocaine from Gill at a specific location on Vine Street in Cincinnati. The police did not record the call, but they heard Holmes's side of the call and debriefed Holmes after the call. Holmes told officers that Gill would be driving a green Acura and that Holmes would meet Gill later that day to complete the drug transaction.

Officers set up surveillance in the area where Holmes said he would meet Gill. The officers observed Gill arrive in a green Acura, exit the car, and join a group of people standing in front of a row house on Vine Street. The police approached Gill and identified themselves as police officers. Gill briefly fled down the block about twenty feet, dropping a set of keys as he ran. In response to the officers' commands to stop, Gill first lay prone on a nearby stoop and then stood up as the officers caught up with him. He was directed to get on the ground and did so. As Gill was frisked by Special Agent David Reames of the federal Drug Enforcement Agency, Reames discovered a small quantity of marijuana in Gill's waistband. Reames then arrested Gill. The officers also found a loaded .45 caliber Smith & Wesson handgun under a child safety seat at the same place on the stoop where Gill had stopped and lain down just a few minutes earlier. The officers collected the dropped keys and approached the green Acura that Gill had been driving. After a drug dog on the scene alerted on the car,[1] the officers used the dropped keys to open the car and searched the passenger compartment of the car. In the center console, they found and seized five ounces of cocaine.

_____

[1]Because the drug dog was not shown to be sufficiently certified or trained, the United States does not contend that the drug dog's alerting on the car created probable cause for the officers to search the car.

Gill was indicted for: (1) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (2) possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c); and (3) possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).  Gill moved to suppress certain of the physical evidence seized by the police, contending that he had been stopped, searched, and arrested unlawfully.  The district court held an evidentiary hearing on the suppression motion and denied the motion.

Gill pleaded not guilty and went to trial before a jury.  At the close of the prosecution's case, Gill moved for a judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29, on Counts One and Three.  The district court reserved ruling until the close of evidence.  Gill renewed the motion before the case was submitted to the jury; the district court again reserved ruling.  The jury found Gill guilty of all three Counts.  After the jury convicted Gill, the district court denied Gill's renewed Rule 29 motion for acquittal.  The district court sentenced Gill to two concurrent sentences of five years and three months' imprisonment on Counts One and Two, and to a consecutive sentence of five years' imprisonment on Count Three.  Gill appeals the denial of his motion to suppress evidence and the denial of his Rule 29 motion for acquittal as to Count Three.

II.

On appeal from the denial of a motion to suppress, we "review[] the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006).  We may affirm the district court on any ground supported by the record, *United States v. Galaviz*, 645 F.3d 347, 354 (6th Cir. 2011), and we may consider trial evidence in addition to evidence admitted at the suppression hearing. *United States v. Hardin*, 539 F.3d 404, 417 (6th Cir. 2008).

"This court reviews de novo a denial of a motion for judgment of acquittal, but affirms the decision if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *United States v. Solorio*, 337 F.3d 580, 588 (6th Cir. 2003) (internal quotation marks omitted).

III.

On appeal, Gill argues that the stop-and-frisk in which an officer found marijuana on Gill's person exceeded the scope of the frisk permissible under *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny; the district court erred in ruling that there was sufficient justification for the search of the Acura incident to arrest; the district court applied the wrong legal standard and overlooked certain suppression hearing testimony in denying Gill's motion to suppress; the evidence adduced at the suppression hearing was insufficient to support a finding of reasonable suspicion; and the district court erred in denying his motion for acquittal on Count Three.

A.

The United States contends that the police had probable cause to arrest Gill and search the Acura prior to, and independent of, their discovery of the marijuana on Gill's person and their seizure of the gun near where Gill was stopped. In determining whether probable cause existed, this Court "consider[s] whether there are facts that, given the factual and practical considerations of everyday life, could lead a reasonable person to believe that an illegal act has occurred or is about to occur." *United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998). Here, prior to stopping and arresting Gill, the police arrested Holmes for a drug offense. Holmes stated that Gill had sold Holmes drugs in the past. The police knew Gill had a prior criminal conviction. In the presence of officers, Holmes arranged by phone to buy from Gill five ounces of cocaine at a location on Vine Street. According to Holmes, during this call, Gill told Holmes that Gill would be driving a green Acura to the Vine Street location. Police waited near the location where Holmes told the officers the transaction would take place. Gill arrived at the location, driving a green Acura, and got out of the car. The police identified themselves to Gill, and Gill fled briefly on foot, during which time officers observed him drop a set of keys. Gill stopped his flight soon after the police repeatedly commanded him to stop. The officers then arrested Gill. The drug transaction Gill had arranged with Holmes never took place.

*Strickland* is a similar case. That case, as here, "involve[d] a detailed tip from an informant, whose details were substantially corroborated by subsequent police observation" but where "the police . . . did not witness any actual illegality." *Id.* at 417. And, as here, in *Strickland* the informant "told police officers the details of a planned drug sale, based on a conversation with the suspect to which the officers were not privy." *Id.* Given these facts, we found sufficient probable cause existed to arrest the suspect.

In this case, as in *Strickland*, because there was also a detailed tip from an informant about a planned drug sale, substantially corroborated by police, probable cause was sufficiently established.

Gill argues that *Strickland* is distinguishable because here, unlike in *Strickland*, there was no consummated drug sale. This argument misses the point. The law does not require that an illegal act be completed for sufficient probable cause to develop; it merely requires the existence of "facts that . . . could lead a reasonable person to believe that an illegal act has occurred or is about to occur." *Id.* at 416. Further, the police in *Strickland*, as here, did not observe a drug transaction, yet in *Strickland* we found that probable cause existed for all the other reasons described above. Gill also argues that *United States v. Higgins*, 557 F.3d 381 (6th Cir. 2009), is more analogous to this case than is *Strickland*. In *Higgins*, this Court held probable cause was lacking where an informant was unknown to police and where the police did not "corroborate any of the informant's statements beyond the innocent fact that Higgins lived at the stated location and the irrelevant (to the determination of whether Higgins's house contained evidence of a present-day crime) fact that Higgins had a criminal record." *Id.* at 390. Here, the police corroborated key elements of Holmes's tip: the color and make of the car Gill was driving and the location of the arranged drug sale. The police also heard Holmes's end of the phone conversation in which Holmes arranged to meet Gill for a drug deal, and debriefed Holmes immediately following the call to ascertain what Gill had said. For these reasons, probable cause to arrest Gill existed at the time of his arrest.

Gill's arrest took place in 2008. The law in this Circuit at the time of Gill's arrest, before the Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332 (2009),[2] allowed police to search a vehicle incident to a suspect's arrest even when the suspect no longer occupied the vehicle. *See, e.g.*, *United States v. White*, 871 F.2d 41, 43-44 (6th Cir. 1989); *see also United States v. Buford*, 632 F.3d 264, 266-67 (6th Cir. 2010) (discussing a search of a vehicle incident to arrest, finding the search permissible under Sixth Circuit case law in effect at the time and holding that "the good-faith exception precludes application of the exclusionary rule when police act in objectively reasonable reliance upon clear and settled Sixth Circuit precedent that is later overruled by the United States Supreme Court"). Thus, the search of the Acura incident to Gill's arrest was lawful, and the district court did not err in denying Gill's suppression motion. Because we conclude that probable cause existed to arrest Gill when he arrived at the

---

[2]*Gant* overruled, at least in part, prior cases such as *United States v. White*, 871 F.2d 41 (6th Cir. 1989), discussed above. *Gant* was not the law at the time of Gill's arrest and so it is inapplicable here.

Vine Street location, we do not reach Gill's other arguments concerning the *Terry* stop and the seized handgun.

### B.

Gill argues that we should vacate his convictions or remand the case based upon the district court's misuse of the phrases "reasonable suspicion" and "probable cause" when ruling that the officers had legal justification for stopping Gill. It is not clear from the district court's opinion whether the court used the wrong standard. However, our review of legal issues is *de novo*, and applying the correct standard, we find that the officers had probable cause to arrest Gill. Because there was probable cause, we need not address the defendant's challenge based on reasonable suspicion.

### C.

At trial, Gill was convicted of Count Three, which charged him with possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c). Section 924(c) provides for a mandatory five-year term of imprisonment for "any person . . . who, in furtherance of any [drug-trafficking] crime, possesses a firearm." Gill concedes that the jury could have reasonably found he possessed the firearm, which satisfies the final clause of section 924(c).

To prove the "in furtherance" element of the statute, the United States must prove "a specific nexus between the gun and the crime charged." *United States v. Ham*, 628 F.3d 801, 808 (6th Cir. 2011). He argues that the United States did not prove that there was a "specific nexus between the gun and the crime charged." *Id.*

In deciding whether the "in furtherance" element has been proved, we consider whether the gun was "strategically located so as to be quickly and easily available for use during [a drug] transaction." *Id.* (quoting *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001)). "Other factors to consider include: (1) whether the gun was loaded, (2) the type of weapon, (3) the legality of its possession, (4) the type of drug activity conducted, and (5) the time and circumstances under which the firearm was found." *Id.* at 808-09.

As to whether the gun was strategically located, there was evidence before the jury that the gun was found at the point where Gill had lain down on a nearby stoop. Although the gun was not found near the cocaine underlying Gill's convictions here, a rational trier of fact could reasonably infer that Gill carried the gun with him from the

car (where the cocaine was found) and placed it under the child safety seat on the stoop. As to the "other factors," there was evidence before the jury that the gun was loaded; the gun was a Smith & Wesson .45 caliber handgun, which is a small weapon that is easily transported or concealed on the body, making it more likely to be used "in furtherance" of a drug crime than would be, for example, a rifle; and Gill—who concedes that his possession of the gun was proved—was, at the time of possession, a convicted felon, making his possession of the firearm illegal. All of this evidence supports a finding that the gun was used "in furtherance" of the drug crime charged in Count Two, *i.e.*, possession with intent to distribute. As discussed above, there was also evidence that Gill drove to the location of his arrest for the purpose of conducting a drug sale and that the contraband in question was found in his car. Finally, the firearm was found at the location of Gill's arrest, at the time of his arrest or shortly thereafter, on the stoop near where he was arrested, in a partially concealed location under a child safety seat. All of these facts would allow a rational trier of fact to conclude that Gill carried a concealable, loaded gun with him in furtherance of the intended drug deal.

Gill argues that this case does not present the same level of "nexus" as other cases in which we have upheld convictions for possession of a gun "in furtherance" of drug-trafficking. For example, in *Mackey*, we upheld a conviction where "there was an illegally possessed, loaded, short-barreled shotgun in the living room of [a] crack house, easily accessible to the defendant and located near the scales and razor blades. Defendant, stopped by police near the gun, possessed cocaine and a large sum of cash." 265 F.3d at 462. Here, while Gill was not arrested in a house, there was evidence indicating that he unlawfully possessed a loaded handgun; the gun was easily accessible to him; and he had transported cocaine to the scene of his arrest for the purpose of a drug transaction. While no scales and razor blades or other classic indicia of drug dealing were present, the amount of cocaine recovered from the Acura matched exactly the amount ordered by Holmes; this fact supports the inference that the drugs found in the car were the drugs Gill sought to sell to Holmes. In *Ham*, 628 F.3d at 803, we upheld a section 924(c) conviction where officers found a stolen but unloaded .38 caliber gun and thirty-seven grams of crack cocaine in a closet where the suspect was hiding, though they found a loaded 9mm handgun on an armoire in the house. Here, Gill, a convicted felon, was found by the jury to possess a loaded handgun. While he was not arrested in the car where the cocaine was found, he had driven the car to the scene and had just exited the car. In *United States v. Street*, 614 F.3d 228, 230-31 (6th Cir. 2010), a section 924(c) conviction was upheld where the defendant possessed a revolver, three balloons

of methamphetamine, and digital scales. Here, Gill obviously had no digital scales with him, but police had received information from Holmes that Gill intended to sell Holmes five ounces of cocaine, and the police recovered that same amount of cocaine from the Acura. As our comparisons to *Mackey*, *Ham*, and *Street* illustrate, the evidence here is sufficient to sustain a section 924(c) conviction.

In sum, there was evidence before the jury to support every factor relevant to the nexus inquiry that could have led a reasonable trier of fact to conclude that the "in furtherance" element was satisfied. For these reasons, Gill's argument fails on his appeal of the denial of his Rule 29 motion for acquittal.

## IV.

We AFFIRM the judgment of the district court as to the motion to suppress, and we AFFIRM the denial of the motion for acquittal as to Count Three.