**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0327n.06

No. 11-5623

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Apr 03, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| WALTER CARTER, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY, McKEAGUE, and GRIFFIN, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. The district court sentenced defendant Walter Carter to two concurrent prison terms of 360 months upon Carter's convictions for possession with intent to distribute five grams or more of cocaine base and for conspiracy to distribute and to possess with intent to distribute between five and 50 grams of cocaine base. On appeal, the defendant contests the denial of his motion to suppress evidence gathered during a search of him and of his residence, the denial of his request for disclosure of the identity of a confidential informant, and the denial of a motion for mistrial premised upon a claim of a violation of Carter's constitutional right to confront the witnesses against him. We find no reversible error in connection with the district court's rulings and, therefore, affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Using a confidential informant, Chattanooga narcotics officer Lee Wolff orchestrated the purchase of cocaine base by the informant on five separate occasions between January and April 2009. On each occasion, the confidential informant would conclude the transaction inside a residence located at 4603 Highland Avenue in Chattanooga, Tennessee. According to Wolff, however, not all purchases were made directly from the defendant. The informant's first authorized drug purchase was from Michael McCallie, with whom Carter once shared the Highland Avenue duplex. The second and fourth purchases were from the defendant directly, the third purchase from Kenneth Smith, and the final purchase, at the direction of Carter, from an individual identified only as "Kip," who handled the transaction while Carter ran an errand to a nearby store.

Based on the informant's drug buys, as well as corroborating evidence obtained by Wolff of recent and continuing drug-trafficking at the residence, the officer prepared an affidavit in support of an application for a warrant to search the premises at 4603 Highland Avenue. In that affidavit, Wolff referenced a "John Doe Alias," rather than any other named individual, in large part because the officer was unaware of the true name of "Kip," the person who actually handed the confidential informant the crack cocaine at the last undercover buy.

A state judge issued the requested warrant, directing Wolff and any other law enforcement officer to "search the premises located at 4603 Highland Avenue,

Chattanooga, Hamilton County, Tennessee, . . . including all persons, containers, outbuildings and motor vehicles found within the curtilage, for the John Doe Alias and for evidence of Cocaine, but not limited to Cocaine." On April 28, 2009, Wolff and approximately a dozen other officers executed the warrant. After knocking on the door of the building at 4603 Highland Avenue and identifying themselves as police officers, the officers "heard running coming from inside the house . . . [and] force[d] entry into the residence." Upon entering the dwelling, Wolff observed Kenneth Smith in the bathroom attempting to flush drugs down the toilet. He thus immediately ran toward Smith to prevent the destruction of evidence.

Sully Batts, another Chattanooga narcotics officer who participated in the execution of the warrant, observed Carter standing alone in the living room of the residence "between a couch and a coffee table." Batts "grabbed [Carter], put him on the floor, handcuffed him, and . . . might have done a real quick pat-down." After another detective took control of the defendant, Batts opened a drawer of the coffee table near Carter and found "a bag of marijuana and a gun holster." Batts then placed the defendant under arrest, and a subsequent, more thorough search of Carter resulted in the additional confiscation of $748 from him and the recovery of keys to the residence and to a vehicle parked on the street in front of 4603 Highland Avenue.

Eventually, after officers found crack cocaine in the kitchen of the duplex, Carter was charged in a superseding indictment with possession with intent to distribute cocaine

base, conspiracy to distribute and to possess with intent to distribute cocaine base, using and maintaining property for the purpose of distributing cocaine base, and making available a building for the purpose of storing and distributing cocaine base. Prior to the beginning of his trial on those charges, the defendant filed a motion to suppress evidence obtained pursuant to the search of his person and of his vehicle. A magistrate judge recommended denial of the motion, and the district court adopted that recommendation.

Carter also moved pretrial to have the prosecution disclose the identity of the confidential informant who allegedly purchased crack cocaine from the defendant, McCallie, Smith, and "Kip." The magistrate judge also denied that motion, concluding that every factor to be considered when deciding whether to reveal an informant's identity weighed against such disclosure.

On August 24, 2010, Carter's trial began in the United States District Court for the Eastern District of Tennessee at Chattanooga. Proceedings continued through August 27, 2010, at which time the jury was unable to reach a verdict and a mistrial was declared.[1] A new trial was scheduled, and proceedings commenced anew on October 12, 2010. The prosecution again offered testimony from law enforcement officers regarding the arrest of the defendant and also introduced testimony from Kenneth Smith and Michael McCallie regarding the drug-selling operations run by those two individuals and Carter.

---

[1] Prior to submitting the case to the jury, the district court dismissed the count of the superseding indictment that alleged that Carter managed and controlled a building for the purpose of storing and distributing cocaine base.

At the close of the proofs on October 15, 2010, the case was again submitted to a jury, which this time returned verdicts on the three remaining counts of the superseding indictment. The jurors found Carter guilty of possession with intent to distribute at least five grams of cocaine base and of conspiracy to distribute and to possess with intent to distribute between five and 50 grams of cocaine base. The jurors concluded, however, that the prosecution failed to adduce sufficient evidence that Carter knowingly and intentionally used and maintained property for the purpose of distributing cocaine base and thus acquitted him of that charge

Following submission by the probation office of a presentence investigation report, the district court sentenced Carter to concurrent prison terms of 360 months, to be followed by an eight-year period of supervised release. The defendant then filed a timely notice of appeal that brought this matter before us.

## *DISCUSSION*

**Denial of Motion to Suppress**

On appeal, defendant Carter challenges the district court's denial of his pretrial motion to suppress the fruits of the search of his person. Although that search was conducted pursuant to a judicially-issued warrant, Carter asserts that the warrant lacked sufficient particularity. We review the denial of a motion to suppress under a two-pronged

standard. Factual findings are reviewed for clear error, while conclusions of law receive

*de novo* review. *United States v. Gill*, 685 F.3d 606, 609 (6th Cir. 2012).

Carter's only appellate challenge to the legitimacy of the warrant involves his

contention that his person should not have been searched by police unless he was

committing a crime at the time of the search or he was named specifically in the warrant

as a person to be searched. Because Carter was simply standing between a couch and

a coffee table when the officers forced their way into the duplex at 4603 Highland Avenue,

however, and because the only name mentioned in the search warrant was "John Doe

Alias," the defendant insists that the search of him and the area around him was improper.

Carter maintains that Detective Wolff, the affiant who prepared the warrant, knew him from

surveillance and from a previous arrest and, thus, easily could have mentioned him by

name in the warrant if that document had truly been intended to cover such an intrusion.

Carter's position not only reflects a misunderstanding of applicable Fourth

Amendment law, but also ignores the specific facts of this case. As we explained in *Mays*

*v. City of Dayton*:

> The specificity required by the Fourth Amendment is *not* as to the person
> against whom the evidence is to be used but rather as to the place to be
> searched and the thing to be seized. When reviewing an application, courts
> must bear in mind that search warrants are directed, not at persons, but at
> property where there is probable cause to believe that instrumentalities or
> evidence of crime will be found.

134 F.3d 809, 814 (6th Cir. 1998) (citations omitted).

In this case, there is no doubt that Wolff's affidavit established sufficient probable cause to justify a search of the drug house where numerous undercover buys had taken place. Moreover, the listing in the warrant of "John Doe Alias" did not render improper the search of any other individuals found in the apartment at the time of the execution of the warrant. First, the appellation "John Doe Alias" was included in the warrant simply because Wolff and his confidential informant were not aware of the complete name of the individual identified only as "Kip," who was directed by Carter to consummate the sale of crack cocaine to the informant in Carter's absence. Second, and perhaps even more germane to the determination of the validity of the defendant's challenge is the simple fact that the warrant specifically authorized Wolff and "any other law enforcement officer" to search the building at 4603 Highland Avenue, "*including all persons . . . found within the curtilage*, . . . for evidence of Cocaine, but not limited to Cocaine." (Emphasis added.) Thus, in recognition of the evidence presented to the issuing judge that the building at 4603 Highland Avenue was routinely used to traffic illegal drugs, the warrant did indeed authorize the search of Carter and of any other individuals found within the curtilage of the building.

In any event, the actual search of the defendant that revealed his possession of $748 did not take place until Carter was arrested by the authorities. Once Batts found the marijuana within reach of the defendant and, knowing that Carter had previously made drug sales from the location at which he was found, probable cause then existed to arrest the defendant on drug-related charges. Moreover, once Carter was arrested, Batts was

justified in searching him incident to that arrest. *See, e.g. Arizona v. Gant*, 556 U.S. 332, 338 (2009). The defendant's Fourth Amendment challenge is thus without merit.

**Denial of Motion to Disclose Identity of Confidential Informant**

In a second appellate issue, Carter contends that his ability to mount a defense was compromised by the refusal of the district court judge to compel the government to disclose the identity of the confidential informant who made the undercover buys of crack cocaine from the defendant, and from McCallie, Smith, and "Kip." Specifically, Carter argues that without that knowledge, he could not identify "Kip" and thus possibly prove that it was "Kip," and not the defendant, who actually was involved in the charged drug conspiracy with Kenneth Smith.

"We review a district court's decision on the matter for an abuse of discretion." *United States v. Beals*, 698 F.3d 248, 269 (6th Cir. 2012) (citing *United States v. Jenkins*, 4 F.3d 1338, 1341 (6th Cir. 1993)). Consequently, we will not overturn the district court's determination unless that court "applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Deja Vu of Cincinnati, LLC v. Union Twp. Bd. of Trs.*, 411 F.3d 777, 782 (6th Cir. 2005) (*en banc*) (citation omitted).

The stated purpose of the prosecution's privilege to withhold disclosure of the identity of an informant "is the furtherance and protection of the public interest in effective

law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). Nevertheless, the privilege is limited by the basic requirements of fairness. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61. Thus, in determining whether to direct or withhold disclosure of an informant's identity, a court must consider "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62.

An examination of those factors in this case leads us to the conclusion that the district court did not abuse its discretion in declining to compel the disclosure of the informant's identity. First, the district court received testimony that the informant was still providing assistance and information to the police and that revelation of the informant's identity would compromise not only the safety of the informant but the integrity of ongoing investigations. Furthermore, the confidential informant was not a necessary witness in the trial of the charged offenses of conspiracy, possession with intent to distribute, and maintenance of a drug house. The defendant was tried only on charges stemming from evidence that was obtained inside the duplex at 4603 Highland Avenue when the officers executed the judicially issued search warrant. The informant's role, on the other hand, was

limited solely to his or her participation in earlier, individual drug buys with which Carter was not charged.

To the extent that Carter argues that the police could not have secured that warrant to search the premises without the testimony of the informant, the defendant is simply mistaken. Wolff's affidavit that was presented to the magistrate judge was, by itself, sufficient to justify issuance of a search warrant for the drug house.

Additionally, the uncovering of "Kip's" identity was not essential to Carter's preparation of a defense to the conspiracy and possession charges. The reasonable inferences that can be drawn from Wolff's testimony during the suppression hearing support the conclusion that Carter himself was already aware of the identity of "Kip." When arranging for drug buys from the individuals in the residence at 4603 Highland Avenue, the confidential informant would, with the knowledge of Wolff, contact the defendant by cell phone. On the date that the informant received crack cocaine from "Kip," Carter called the informant back to tell him that "Kip," rather than the defendant or Kenneth Smith, would be handling the transaction because Carter "had to run out to the store." Indeed, as Wolff was driving the informant to the drug house for the purchase, the narcotics officer saw Carter and Smith in a vehicle "about a mile away." It thus appears that Carter was quite aware of Kip's existence and knew exactly who he was.

Finally, no testimony from "Kip" was needed to establish Carter's guilt of the possession and conspiracy. At trial, both Kenneth Smith and Michael McCallie testified

about the defendant's possession of certain controlled substances and about his role in the drug-trafficking operation. Those witnesses were subjected to vigorous cross-examination by defense counsel, yet the jury chose to credit the testimony of those prosecution witnesses and conclude that Carter was indeed responsible for at least some of the criminal activities with which he was charged.

A balancing of the various *Roviaro* factors thus supports the decision made by the magistrate judge to deny the defendant's request for disclosure of the informant's identity. In any event, even if we would not have evaluated those factors exactly as the district court did, it is clear that the district court's determination was not so egregious or erroneous as to constitute an abuse of discretion. This issue is also without merit.

**Denial of Motion for Mistrial on Confrontation Clause Grounds**

Carter also contends that the district court erred in failing to declare a mistrial after government witness Kenneth Smith testified about a letter he had written to Carter that referenced prior drug sales Carter had made to the confidential informant. Because that informant did not testify at trial, and because the court had previously directed the prosecution not to delve into uncharged offenses Carter might have committed, the defendant insists that he was unjustly deprived of his right to confront the witnesses against him when that testimony was put before the jury.

We review a district court's denial of a motion for a mistrial for abuse of discretion. *United States v. Carroll*, 26 F.3d 1380, 1383 (6th Cir. 1994) (quoting *United States v. Chambers*, 944 F.2d 1253, 1263 (6th Cir. 1991)). Thus, again, we will not overturn the district court's determination unless that court "applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Deja Vu of Cincinnati, LLC*, 411 F.3d at 782.

In August 2009, Smith handwrote a letter to Carter in response to correspondence the defendant had sent to Smith after the two men were arrested. The body of Smith's letter is as follows (uncorrected):

> Bro what's up. I hope you are doing ok.
>
> Bro frist of all I am a real nigger and you know that and you know I would never do any thing to hurt you. Bro I don't no what every one else is telling you but it's like this. I know and you know that bitch as nigger got us in this bullshit so don't put it on me. Ask that bitch, because I don't give a fuck about her either. All I care about is how we are going to get our self out of this shit, now I got my paper work just like you got your and you know they didn't come and buy shit from me 3 "*times.*" So all I was saying is if you take this case I'll do what ever "*to help you.*" That I wouldn't let you go out like that and "*that's my word.*" Bro I love you more than I love some of the people in my family. Hell you are my family, bro and all I was telling "G" was to get word to you and ask you to cut my loss, and if you couldn't do that what you was going to do! Bro I will never tell any one or stand up in any one's court to tell on you. I don't give a fuck how much time "*they give me*" and if you think I would then you not the friend I thought you was. Bro one more thing if you think this is all because of me tell me what you want me to do, and I'll *do it*.

At trial, defense counsel introduced the letter into evidence and even had it projected in its entirety so that the jurors could read it as the attorney cross-examined witness Smith. Throughout that cross-examination, defense counsel sought to twist the language of the letter unnaturally in order to obtain an admission from Smith that the letter demonstrated that Smith believed that Carter was innocent of the charges against him. Finally, after Smith answered questions about his prior inconsistent testimony, the witness stated, "I spoke the truth today." Defense counsel then commented, "I agree with you on part of it. You did speak the truth when you said Walter Carter didn't do anything."

On redirect examination, the prosecutor sought to correct any false impressions that defense counsel's questioning had left with the jury. Thus, in order to emphasize that Smith did *not* exonerate the defendant in his letter or in his testimony, the prosecutor and the witness engaged in the following question-and-answer colloquy:

Q      Do you see where my red mark it says ["]now["]?

A      Now, I got my paperwork just like you got your paperwork, just like you got yours. And, you know, they don't come – wait a minute. And you know they didn't come to buy shit from me three times, so all I was saying was, all I was saying is if you take the case, if you take the case, I'll do whatever to help you.

Q      Let's stop there. So, is there anywhere in this letter where you say if Mr. Carter did anything?

A      No. He sold, he – what I said was I got my paperwork like he got his paperwork.

Q      What are you talking about "paperwork"?

A      Discovery.

Q    And what are you saying in that sentence?

A    I'm saying I read my discovery and I'm sure he got his discovery. And I'm sure he know that he made three sales to an undercover officer agent.

At that point in the proceedings, defense counsel objected and moved for a mistrial because he was unable to question the absent, unknown confidential informant about the three drug sales referred to by Smith. The district court denied the motion for a mistrial and instructed the jury:

> Ladies and gentlemen, I want to instruct you that you should disregard Mr. Smith's last answer to [the prosecutor's] last question. You may not even remember what it is by now, but to the extent you do, I'm going to order – I'm going to direct you to disregard Mr. Smith's last answer.

The district court's ruling was not in error. Contrary to the defendant's assertion, the statement made by Kenneth Smith about the three drug sales was not improperly admitted hearsay. First, the statement was not one made by the unavailable informant offered to prove the truth of the matter asserted in the statement. *See* Fed. R. Evid. 801(c). Instead, the statement was simply an expression of Smith's own impression of what Carter knew about the defendant's prior activities.

Additionally, it was defense counsel himself who introduced to the jury the entire letter, including Smith's statement that "they didn't come and buy shit from me 3 '*times*.'" Defense counsel's ability to spin questions about that letter in such a manner as to convince the jury that Smith intended to exonerate Carter of all wrongdoing cannot be

insulated from opposing counsel's opportunity to counteract that implication by permitting Smith to explain that, in fact, Carter knew that he (Carter) had engaged in three prior drug sales. *See* Fed. R. Evid. 106; *United States v. Segines*, 17 F.3d 847, 856 (6th Cir. 1994) ("When one party has opened the door on an issue, by eliciting prejudicial or inadmissible testimony, an opponent, in the court's discretion, [may] introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission." (citations and internal quotation marks omitted.))

Furthermore, after denying the motion for a mistrial, the district court directed the jurors to disregard the allegedly improper statement made by Smith. A reviewing court must presume that the jurors followed the district court's instructions. *See, e.g.*, *Zafiro v. United States*, 506 U.S. 534, 540 (1993). Consequently, no reversible error resulted from the prosecution's redirect examination that was intended solely to rebut a false impression left by defense counsel's cross-examination of a key government witness.

**CONCLUSION**

For the reasons set out above, we AFFIRM the judgment of the district court.