**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0360n.06

Case No. 19-1541

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Jun 18, 2020 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| ERNESTO McKINNEY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | **O P I N I O N** |

**BEFORE:  COLE, Chief Judge; McKEAGUE and KETHLEDGE, Circuit Judges.**

**McKEAGUE, Circuit Judge.**  A jury convicted Ernesto McKinney of four federal charges related to cocaine trafficking and possessing a firearm.  On appeal McKinney argues that the district court should have granted his motion to acquit on one of the counts, that the testimony of one of the witnesses violated the Federal Rules of Evidence, and that his sentence was procedurally and substantively unreasonable.  We find his arguments unpersuasive and **AFFIRM.**

**I**

In August of 2017 Ernesto McKinney was on supervised release when several of his required drug tests came back positive for cocaine use.  This led to his being detained for violating the conditions of his supervised release.  Meanwhile, McKinney had been on Detective Martin Albert's radar since June when a confidential informant  had "identified McKinney as a high level

cocaine source for the Grand Rapids, MI area." And so, when Det. Albert was alerted to McKinney's arrest, he began to monitor McKinney's telephone calls from jail.

Over a few days, Det. Albert listened to phone calls between McKinney and Amber Harris, McKinney's girlfriend at the time. In the calls, McKinney and Harris discussed certain unidentified "things" in McKinney's apartment and car. He told her to get in contact with two known drug dealers and give them "something in return for money." He asked if she got "that thing out from under the hood" of his car. And in one of the later calls, Harris confirmed that "she had removed everything of value" from McKinney's apartment and placed it in a black bag under her bed. She repeatedly emphasized that she got *everything of value*. McKinney told her to not tell anyone where she had gotten "those things."

Based on the unusually guarded language employed by McKinney and Harris, Det. Albert believed that they were discussing guns and drugs, albeit without using the word "guns" or "drugs." So Det. Albert got a warrant to search Harris's home. There the police found a black bag under Harris's mattress. The bag contained two loaded handguns, a package with one kilogram of cocaine, and two smaller bags of cocaine, along with a cellphone, a pair of headphones and two belts. While the officers were still at the house, Harris returned. She told Det. Albert that the black bag and its contents belonged to McKinney. She explained that she had retrieved the guns and drugs from under the dishwasher in his apartment.

At that point Det. Jason Russo joined Det. Albert at the jail to interview McKinney. After being Mirandized, and briefly insisting that he wouldn't cooperate unless the police released him from custody, McKinney admitted that the drugs and guns found under Harris's mattress were his. Specifically, he said that the smaller two bags of cocaine were his to sell free and clear and that he owed someone around $20,000–30,000 for the larger one-kilogram bag of cocaine. The officers

took this to mean that McKinney had the larger bag of cocaine on credit; once he sold the cocaine he would pay the $20,000–30,000 to his supplier. Additionally, McKinney admitted that one of the guns was his and that he was temporarily holding onto the other one for a friend.

With this evidence in hand, the government indicted McKinney on four counts: (1) conspiracy to distribute over 500 grams of cocaine, under 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B)(ii); (2) possession with intent to distribute over 500 grams of cocaine under 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii), and 18 U.S.C. § 2; (3) possession of a firearm in furtherance of a drug trafficking crime, under 18 U.S.C. § 924(c)(1)(A)(i) and 21 U.S.C. § 841(a)(1); and (4) possession of a firearm by a convicted felon, under 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

At trial, the government presented testimony from three witnesses: Det. Albert, Harris, and Det. Russo. Det. Albert testified as to the events leading up the search. He explained what he overheard in McKinney's phone calls with Harris, explained what the officers found in the search, and detailed McKinney's admissions in the conversation they had at the jail. Det. Albert also explained that in his experience, one kilogram of cocaine was a dealer's quantity, not a personal user's quantity, and that guns and drugs frequently went together.

Harris testified about how the drugs and guns ended up under her mattress. She explained that as McKinney's girlfriend, she knew McKinney sold cocaine to support himself, that she had accompanied him on a few drug sales, and that she had seen him with one of the guns. She also said she believed that he generally carried a gun with him when he sold cocaine. Harris testified that the day before McKinney was arrested she'd seen him fiddling around under the dishwasher— a spot that was easily accessible from anywhere in McKinney's small apartment within 10 seconds. So when McKinney told her during one of his coded phone calls from jail to "[g]et that"—which she understood as an instruction to remove McKinney's drugs and valuables from his apartment—

Harris checked under the dishwasher. There she found two guns and a package that she suspected contained cocaine. She put the items in a black bag that she found and brought the bag to her house where she hid it under her mattress. When she called McKinney to tell him that she had a black bag with his things, he told her to hold onto it and not give it to anyone.

Last, Det. Russo testified that he accompanied Det. Albert to interview McKinney at the jail. He corroborated Det. Albert's testimony that McKinney admitted the drugs and guns were in his possession.

The defense presented no witnesses but moved to acquit on all charges, arguing that the government's evidence was insufficient. The judge denied the motion, and the jury convicted McKinney of all four counts.

McKinney proceeded to sentencing. He was subject to a ten-year mandatory minimum for counts one and two, 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), and a five-year mandatory minimum on count three that had to be served consecutively to any other term, 18 U.S.C. § 924(c)(1)(A)(i). And so, in practice, McKinney faced a mandatory total sentence of 15 years, or 180 months. The government moved for a downward departure of 33 months for substantial assistance under U.S.S.G. § 5K1.1. The defense argued for a further reduced sentence because the government's motion understated the amount of assistance by McKinney and because McKinney's cooperation impacted him significantly. McKinney was ostracized by most of his friends and family and he faced physical threats while in prison. Further, the defense argued for a lower sentence based on McKinney's life circumstances; his mother was undergoing treatment for cancer, he had a 20-year-old son with whom he needed to build a relationship, and he promised to make changes in his life, starting with moving out of the state of Michigan. The court sentenced McKinney to 135 months, departing 45 months downward from McKinney's mandatory minimum.

On appeal, McKinney makes three main arguments. First, he argues that there was insufficient evidence to support his conviction for possessing a gun in furtherance of a drug crime and therefore the district court should have granted his motion for judgment of acquittal on that charge. Second, he argues that Det. Albert's testimony violated several evidentiary rules: Det. Albert gave expert testimony without being qualified as an expert, he testified about the content of a recording without the recording being introduced in violation of the best evidence rule, he opined on ultimate issues reserved for the jury, and he gave opinions without the proper foundation. Third, McKinney argues that his sentence was procedurally and substantively unreasonable. Because we find McKinney's arguments unpersuasive, we affirm his convictions and his sentence.

II

### A. Sufficiency of the evidence

McKinney first challenges the district court's denial of his judgment of acquittal and argues that the evidence at trial was insufficient to prove that he possessed a firearm *in furtherance* of a drug trafficking crime under § 924(c). We review insufficiency-of-the-evidence claims de novo and ask "whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Jenkins*, 593 F.3d 480, 483 (6th Cir. 2010) (quoting *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007)); *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002).

McKinney correctly notes that it is not enough that there was a gun "on the same premises as a drug transaction." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). There must be evidence of a "specific nexus between the gun and the crime charged." *Id.* This is because "the firearm's presence in the vicinity of the crime [must be] something more than mere chance or

coincidence." *United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004). In order to support a conviction under § 924(c), the weapon must "advance, promote, or facilitate the crime." *United States v. Paige*, 470 F.3d 603, 609 (6th Cir. 2006).

But in making his argument, McKinney incorrectly relies on the fact that he was "never seen conducting a drug transaction with a firearm." A defendant doesn't have to be *observed* holding a firearm while committing a drug crime in order to be convicted under § 924(c). *See United States v. Steele*, 919 F.3d 965, 970 (6th Cir. 2019) ("The jury could have convicted Steele based on the testimony that he stored guns in the house to protect his drug stash."); *United States v. Lengen,* 245 F. App'x 426, 435–36 (6th Cir. 2007) ("Contrary to the defendant's belief, however, that nexus does not require actual possession of the firearm while holding the prohibited controlled substances." (emphasis omitted)). The government can use circumstantial evidence to prove that a defendant's firearm facilitated his drug trafficking crime, just like it can use circumstantial evidence to prove the elements of any other crime. *United States v. Manjate*, 327 F. App'x 562, 567 (6th Cir. 2009). "[A] jury can reasonably infer that firearms which are strategically located so as 'to provide defense or deterrence in furtherance of the drug trafficking' are used in furtherance of a drug trafficking crime." *United States v. Couch*, 367 F.3d 557, 561 (6th Cir. 2004) (quoting *Mackey*, 265 F.3d at 462–63). "Other factors to consider include: (1) 'whether the gun was loaded,' (2) 'the type of weapon,' (3) 'the legality of its possession,' (4) 'the type of drug activity conducted,' and (5) 'the time and circumstances under which the firearm was found.'" *United States v. Ham*, 628 F.3d 801, 808–09 (6th Cir. 2011) (quoting *Mackey*, 265 F.3d at 462). These factors are collectively called the *Mackey* factors.

In this case, the government presented persuasive evidence at trial that the guns were strategically located to facilitate McKinney's drug trafficking crimes. The guns were hidden *with*

his cocaine under the dishwasher, so it would be easy to access the drugs and guns simultaneously and the guns could be used to protect his drug supply. *United States v. Volkman*, 797 F.3d 377, 391–92 (6th Cir. 2015); *United States v. Mendizabal*, 214 F. App'x 496, 501 (6th Cir. 2006). The hiding spot under the dishwasher was also easy to access from anywhere in McKinney's apartment, accessible within 10 seconds according to Harris's testimony. *United States v. Brown*, 732 F.3d 569, 576–77 (6th Cir. 2013) (finding that a jury could reasonably infer that guns were strategically located because someone could retrieve the gun from anywhere in the house within 10–15 seconds). And the hiding spot was very unusual, as opposed to a generic storage space where a gun might coincidentally be placed alongside drugs. *Cf. United States v. Leary*, 422 F. App'x 502, 510–11 (6th Cir. 2011) (finding no specific nexus between guns and a small quantity of drugs found in a closet off the defendant's bedroom).

The other *Mackey* factors also support the jury's finding that McKinney possessed firearms in furtherance of a drug trafficking crime. The guns were loaded, so they were ready to use at a moment's notice. They were handguns, which are more likely to be used by drug dealers than other types of guns, such as shotguns or rifles. *United States v. Gill*, 685 F.3d 606, 611 (6th Cir. 2012). Because McKinney was a convicted felon, possessing the guns was illegal. And most importantly, there was a very large amount of cocaine under McKinney's dishwasher, worth tens of thousands of dollars, according to McKinney. Thus, it was the kind of stash that seems to warrant a gun for protection. *United States v. Shaffer*, 781 F. App'x 404, 416 (6th Cir. 2019); *Leary*, 422 F. App'x at 512. Last, Harris witnessed several of McKinney's drug sales, and she testified that she believed McKinney carried his gun with him for drug sales. Based on these facts presented at trial, a reasonable factfinder could find McKinney guilty of possessing a firearm in furtherance of a drug crime.

### B. Evidentiary errors

McKinney challenges Det. Albert's testimony on the bases of several rules of evidence. He says Det. Albert gave expert testimony about the "coded" phone calls between Harris and McKinney without the government qualifying Det. Albert as an expert. He says the court should have instructed the jury on how to differentiate between Det. Albert's dual roles as expert and fact witness. And McKinney says the testimony about the phone calls also violated the best evidence rule, because the government didn't introduce the recordings of the calls into evidence. Last, he says that Det. Albert opined on ultimate issues for the jury and repeatedly gave his opinion without the government establishing a foundation.

McKinney faces a preliminary problem: he didn't raise these objections to this testimony at trial.[1] And so McKinney's claims are reviewed for plain error. *United States v. Kilpatrick*, 798 F.3d 365, 378 (6th Cir. 2015). In order to constitute plain error, any mistake must have affected McKinney's substantial rights by prejudicing his case. *United States v. Olano*, 507 U.S. 725, 734 (1993). On plain error review it is McKinney's burden to prove that the alleged errors were prejudicial. *Id.* He hasn't met that burden.

Even if we put all of Det. Albert's challenged testimony to the side, the remaining evidence of McKinney's guilt is overwhelming. The government didn't need Det. Albert's testimony about McKinney's conversations with Harris from jail, because Harris testified about the same conversations. Just like Det. Albert, Harris explained that McKinney spoke to her in "coded" language in those calls. And Harris interpreted the code in just the same way as Det. Albert; Harris

---

[1] There is one objection in common between the trial transcript and McKinney's brief on appeal: that Det. Albert testified to ultimate issues reserved for the jury when he answered yes to the question "Was it clear from your conversation that [McKinney] admitted both actual and constructive possession of the cocaine?" But the trial court sustained the defense's objection on this point, and the defense didn't argue either in the district court or in its brief on appeal that the court addressed its objection inadequately.

understood McKinney to be requesting that she remove his drugs and guns from the apartment. The government didn't need Det. Albert's testimony that one kilogram of cocaine was generally a dealer's quantity. According to both detectives, McKinney admitted he intended to sell the cocaine. And Harris corroborated that testimony when she said that McKinney made a living selling drugs. The government didn't need Det. Albert to testify to the ultimate issue of whether McKinney was engaged in a conspiracy, because according to the uncontradicted testimony of both detectives, McKinney admitted to working with another person who'd given him cocaine to sell on credit. Last, the government didn't need Det. Albert's testimony that guns and drugs generally go together. Harris testified that she found the guns and drugs stored together under the dishwasher in McKinney's apartment, that she had seen McKinney handling one of the recovered guns on several occasions, and that she believed McKinney carried his gun with him when he sold drugs. There were multiple pieces of specific evidence that in this case, these guns and these drugs went together.

Because the unchallenged evidence of McKinney's guilt was overwhelming, none of the evidentiary mistakes alleged by McKinney plausibly prejudiced his case or substantially affected his rights. At worst, any mistake was harmless error.

## C. Sentencing

McKinney challenges his sentence as substantively and procedurally unreasonable. We review the reasonableness of criminal convictions "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007).

There is a presumption that sentences that fall within the sentencing guidelines range are substantively reasonable. *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009). There is an even stronger presumption that below-guidelines sentences are reasonable. *United*

*States v. Fields*, 763 F.3d 443, 455 (6th Cir. 2014). The strongest presumption of all regards mandatory minimums. "When [a sentence] has been challenged as being too high, a mandatory minimum sentence is by definition substantively reasonable." *United States v. Marshall*, 736 F.3d 492, 501 (6th Cir. 2013). Because McKinney was subject to a mandatory minimum that exceeded his guidelines range, his total guideline sentence and mandatory minimum became one and the same: 180 months. U.S.S.G. § 5G1.1(b). After hearing the government's motion for a downward departure, the district court sentenced McKinney to a total of 135 months, far below his mandatory minimum and guidelines sentence. And so McKinney bears an exceptionally heavy burden in proving that his below-guidelines, below-statutory-minimum sentence was substantively unreasonable.

He has not met that burden. McKinney argues that his sentence didn't adequately account for how much he assisted the government, but we don't second guess a district court's determination of how much to depart for substantial assistance. *United States v. Perry*, 743 F. App'x 617, 619 (6th Cir. 2018); *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008). And McKinney argues that the district court failed to sentence him as an individual and thus gave him a sentence more severe than necessary to achieve the statutory goals of sentencing in § 3553(a). But "[t]he whole point of mandatory minimums is to remove from judges the discretion to impose low sentences on sympathetic defendants." *United States v. Flowers*, 640 F. App'x 456, 460 (6th Cir. 2016) (quoting *Marshall*, 736 F.3d at 501). Further, the district court lacked discretion to even consider individualized factors like McKinney's "age, . . . , history of drug abuse, and his need for treatment" because those facts are unrelated to the defendant's substantial assistance. *United States v. Williams*, 687 F.3d 283, 286 (6th Cir. 2012); *United States v. Bullard*, 390 F.3d 413, 416 (6th Cir. 2004). McKinney's argument also repeatedly references the sentencing guidelines range

that would have applied *if* he had pled guilty, blaming the government for refusing to promise to move for a downward departure before his trial. The plain fact is McKinney *didn't* plead guilty. This argument does nothing to move the needle on McKinney's substantive reasonableness claim.

Last of all, McKinney argues that his sentence wasn't procedurally reasonable because the court didn't explain why it rejected his arguments for a downward departure or variance. But again, many of McKinney's arguments for a lesser sentence were about factors the district court couldn't rightly consider in departing below the mandatory minimum. What's more, McKinney did not raise this procedural objection at his sentencing hearing. When asked whether he had any objections to the sentence—the *Bostic* question—the defense said no. Thus, plain error applies. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc); *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). We are satisfied that there was no plain error here.

## IV

For these reasons, we **AFFIRM** McKinney's convictions and sentence.