NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0380n.06

Case No. 24-3670

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 29, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| TRA'VEN BOYER-LETLOW, | ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: SILER, KETHLEDGE, and BUSH, Circuit Judges.

**SILER, Circuit Judge.** Defendant Tra'ven Boyer-Letlow appeals the district court's denial of his motion to suppress. We affirm.

**I.**

Boyer-Letlow was traveling through the Cleveland Hopkins International Airport when he joined Dilhan Brown at an empty gate, sat next to him, and took one of the two backpacks next to Brown. Boyer-Letlow and Brown each had bulges in their front pockets and multiple cell phones. The two then walked together to a different gate, scanned their boarding passes, and entered the jet bridge to board a flight to Los Angeles.

Ryan Gibbons, a Medina County Sheriff's Office detective who is assigned to Homeland Security Investigations (HSI) at the airport, saw the interaction, the bulges in their pockets, and their multiple cell phones and suspected that they were carrying bulk currency to fund illegal activities.

Gibbons approached Brown on the airplane jet bridge, identified himself as law enforcement, and asked Brown if he would speak with him. Brown agreed and told Gibbons that he was traveling alone to Los Angeles for "a few days" and that he did not know Boyer-Letlow. Brown revealed that he was carrying $6,000 in his backpack and $6,000 in his pocket.

Boyer-Letlow entered the jet bridge during Gibbons and Brown's conversation, and Gibbons again identified himself as law enforcement and asked Boyer-Letlow if he would speak with him. Boyer-Letlow also said that he was going to Los Angeles for "a few days" and denied knowing Brown. And Boyer-Letlow told Gibbons that he had $6,000 in his backpack but would not say how much he had in his pocket. Each man showed Gibbons some of his cash, and Gibbons saw that it was bundled the same way with similar rubber bands. Gibbons asked the men if they would go with him to the HSI office. He explained that they could decline and board their flight but that he was going to administratively seize their cash unless they went with him and could legitimize it. Boyer-Letlow and Brown agreed and followed Gibbons to the HSI office. Gibbons told them that they were not under arrest, and he did not take their tickets.

Gibbons questioned them separately at the HSI office. During Boyer-Letlow's interview, he consented to the search of his bag, his cell phone, and his home. Gibbons administratively seized Boyer-Letlow's cash and his two cell phones, then went with Boyer-Letlow to his home, where law enforcement found drugs during their search.

Boyer-Letlow was arrested and charged with possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vi). He moved to suppress the evidence against him, arguing that law enforcement illegally arrested or stopped him, seized his cash, and failed to read him *Miranda v. Arizona*, 384 U.S. 436 (1966), warnings. The district court denied the motion, concluding that Boyer-Letlow's interactions with police were voluntary and law enforcement had

probable cause to seize the cash. Boyer-Letlow pleaded guilty in a plea agreement but reserved his right to appeal the denial of the motion to suppress. He now appeals that ruling.

## II.

On appeal of an order denying a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo, and we "consider the evidence in the light most favorable to the government." *United States v. Taylor*, 121 F.4th 590, 594 (6th Cir. 2024) (citation omitted). We "can affirm a suppression motion's denial on any basis supported by the record." *United States v. Hill*, No. 22-5274, 2023 WL 152474, at \*2 (6th Cir. Jan. 11, 2023) (citing *United States v. Gill*, 685 F.3d 606, 609 (6th Cir. 2012)), *cert. denied*, 143 S. Ct. 2597 (2023).

## III.

### A.

Boyer-Letlow argues that the district court should have suppressed the evidence law enforcement collected against him at the airport and from the search of his home because Gibbons illegally arrested or at least illegally seized him on the jet bridge.

The Fourth Amendment prohibits unreasonable seizures, but law enforcement approaching a member of the public to ask questions is not a seizure. *United States v. Drayton*, 536 U.S. 194, 200 (2002). A seizure occurs "when, 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Lawson v. Creely*, 137 F.4th 404, 416 (6th Cir. 2025) (quoting *United States v. Knox*, 839 F.2d 285, 289 (6th Cir. 1988)).

Gibbons's conversation with Boyer-Letlow became a seizure when he told Boyer-Letlow that he would seize the cash unless Boyer-Letlow came to the HSI office and legitimized it. Boyer-Letlow may have been "technically still free to continue his travels[,]" but seizing a traveling

person's property "can effectively restrain the person since he is subjected to the possible disruption of his travel plans in order to remain with [the property] or to arrange for its return." *United States v. Place*, 462 U.S. 696, 708 (1983); *see United States v. Baro*, 15 F.3d 563, 567 n.1 (6th Cir. 1994) (noting that a reasonable person "presented . . . with a Hobson's choice: abandon more than $14,000 to a plain-clothed stranger without obtaining a receipt in return or miss his flight, forfeit his plane ticket, and remain stranded in foreign environs" would have believed that he was not free to leave).

Boyer-Letlow insists that Gibbons's comment escalated the interaction to an arrest, but Gibbons did not take Boyer-Letlow's ticket or seize his bag without his permission, and he told Boyer-Letlow that he was not under arrest. *See Knox*, 839 F.2d at 292; *Baro*, 15 F.3d at 567 n.1 (calling the same facts an "investigatory detention" and not an arrest). So when Gibbons asked Boyer-Letlow if he would go to the HSI office, Gibbons only needed to have "reasonable, articulable suspicion that [Boyer-Letlow] ha[d] been, [was], or [was] about to be engaged in criminal activity." *Lawson*, 137 F.4th at 417; *Place*, 462 U.S. at 707–10. We conclude that he did.

At that point, Gibbons knew that Boyer-Letlow denied knowing Brown despite their interacting with each other and then walking to the same gate, he was carrying large wads of cash that were bundled the same way as Brown's, he had split the cash between his backpack and pockets presumably to avoid the $10,000 bulk currency smuggling threshold, he was going to a city that sources illegal drugs, he had multiple cell phones, and some of his answers were vague or evasive. Those indicators led Gibbons to believe based on his training and experience as a member of a task force that combats bulk smuggling of narcotics and currency that Boyer-Letlow was smuggling bulk currency to Los Angeles to fund illegal activities. That is sufficient support

for Gibbons's reasonable suspicion. *United States v. McCallister*, 39 F.4th 368, 374 (6th Cir. 2022) (in forming a reasonable suspicion, officers may rely on their observations and may draw inferences based on their "experience and specialized training" (citations omitted)); *United States v. Smith*, 594 F.3d 530, 541 (6th Cir. 2010) ("[E]vasive, non-responsive, and vague answers to the officers' questions" can contribute to reasonable suspicion); *United States v. Winfrey*, 915 F.2d 212, 217 (6th Cir. 1990) ("While each factor by itself may be insufficient to establish reasonable suspicion that a crime was committed, articulable suspicion is based on an evaluation of all the surrounding circumstances as viewed by those trained in the law enforcement field.").

**B.**

Boyer-Letlow next argues that because Gibbons arrested him on the jet bridge, he should have given him *Miranda* warnings then.

"The Fifth Amendment requires law enforcement officers to advise a person of their so-called *Miranda* rights, including the right to remain silent, before interrogating them while they are 'in custody.'" *United States v. Zabel*, 35 F.4th 493, 502 (6th Cir. 2022). But a seized person is generally not considered "in custody" because the deprivation of the person's freedom needs to be more significant than a typical investigative stop. *United States v. Cantie*, 839 F. App'x 998, 1003 (6th Cir. 2021) (citing *Maryland v. Shatzer*, 559 U.S. 98, 113 (2010)); *United States v. Dunn*, No. 23-5058, 2023 WL 8114366, at *6 (6th Cir. Nov. 22, 2023). Because Boyer-Letlow's was not, we reject his *Miranda* argument. *Knox*, 839 F.2d at 292.[1]

AFFIRMED.

---

[1] To the extent that Boyer-Letlow challenges the seizure of the cash and his cell phones or the search of his house, he has forfeited those arguments by not including them in his statement of issues or by presenting underdeveloped arguments. *See Bard v. Brown Cnty.*, 970 F.3d 738, 750 (6th Cir. 2020). And we decline to address his denial-of-bail argument because the order denying his motion for bail pending appeal did.