RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0140p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
────────────────

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

            *v.*                                          No. 12-1591

SIDNEY BROWN,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:11-cr-00150-1—Paul Lewis Maloney, Chief District Judge.

Argued: May 2, 2013

Decided and Filed:  May 16, 2013

Before:  MARTIN, GUY, and McKEAGUE, Circuit Judges.

────────────────

## COUNSEL

**ARGUED:** Scott Graham, SCOTT GRAHAM PLLC, Portage, Michigan, for Appellant. Sally J. Berens, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.  **ON BRIEF:** Scott Graham, SCOTT GRAHAM PLLC, Portage, Michigan, for Appellant.  Mark V. Courtade, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

────────────────

## OPINION

────────────────

BOYCE F. MARTIN, JR.  Circuit Judge.  A jury convicted Sidney Brown of two crimes: (1) possession with intent to distribute twenty-eight grams or more of cocaine base and (2) possession of a firearm in furtherance of a drug-trafficking crime.  Brown's appeal poses three questions. First, did the affidavit accompanying the search-warrant application establish probable cause for the magistrate to issue the search warrant?  We hold that it did.  Second, did the district court err by refusing to hold a *Franks* hearing?

We hold that it did not.  Third, did the jury's convicting Brown of possession of a firearm in furtherance of a drug-trafficking crime constitute a manifest miscarriage of justice?  We hold that it did not.  Given the answers to these questions, we **AFFIRM** the district court's judgment.

A confidential informant told law enforcement that he had seen cocaine and what he considered to be drug dealing at Sidney Brown's house.  A law-enforcement officer applied for a warrant to search Brown's home; in the affidavit accompanying the application, the officer recounted what the informant had told him.  A federal magistrate issued the warrant and, upon executing it, law enforcement found cocaine, a Beretta pistol, which Brown admitted was his, and $4,700 in cash, in Brown's home.  Brown moved to suppress the evidence seized, arguing that the affidavit failed to establish probable cause for the search; in the alternative, Brown argued for a *Franks* hearing because he asserted that the affidavit contained false statements.  The district court, in a written opinion, denied the motion.

At trial, at the close of the prosecution's case, Brown moved, under Federal Rule of Criminal Procedure 29, for acquittal on all counts.  At the close of all the evidence, however, Brown did not renew the motion.  A federal jury found Brown guilty of all three counts in the indictment: (1) possession with intent to distribute twenty-eight grams or more of cocaine base, a violation of 21 U.S.C. sections 841(a)(1), (b)(1)(B)(iii); (2) possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. section 924(c)(1)(A)(i); and (3) possession, as a felon, of a firearm, in violation of 15 U.S.C. section 922(g)(1).  The district court sentenced him to seventeen-and-a-half years' imprisonment.  Brown timely appealed only counts (1) and (2).

On appeal, Brown argues that the district court erred both in denying his motion to suppress and in rejecting his argument that the officer's affidavit did not provide probable cause for the magistrate to issue the search warrant. When reviewing a district court's order denying a defendant's motion to suppress, we review for clear error the district court's factual findings, but we review de novo the district court's application

of the law to those facts. *United States v. Keith*, 559 F.3d 499, 503 (6th Cir. 2009) (citing *United States v. Garcia*, 496 F.3d 495, 502 (6th Cir. 2007)).

The district court held no fact-finding hearing in conjunction with Brown's motion to suppress; rather, the court reviewed the affidavit and held that it provided probable cause for the magistrate to issue the search warrant. Therefore, we will review de novo the court's legal conclusion that the affidavit provided probable cause. *United States v. Leake*, 998 F.2d 1359, 1362 (6th Cir. 1993). Given the de novo standard of review, where, as here, the district court reviewed the magistrate's probable cause determination, we owe the district court's conclusion no particular deference. *Id.* at 1362–63.

Yet we must give great deference to a magistrate's determination of probable cause. *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001) (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 907 (2000) (parallel citations omitted); *United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993); *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). Consequently, we may only reverse a magistrate's decision to grant a search warrant if the magistrate arbitrarily exercised his or her authority. *Id.* (citing *Allen*, 211 F.3d at 973; *Finch*, 998 F.2d at 352; *United States v. Swihart*, 554 F.2d 264, 267–68 (6th Cir. 1977)).

We review the probable-cause sufficiency of an affidavit to ascertain "'whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" *Id.* (quoting *Davidson*, 936 F.2d at 859). Probable cause exists "'when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place.'" *Id.* at 479 (quoting *Davidson*, 936 F.2d at 859). In reviewing whether the affidavit supports the magistrate's probable-cause determination, we must review the affidavit in a commonsense, rather than a hypertechnical, manner. *Id.* (citing *Allen*, 211 F.3d at 973; *Davidson*, 936 F.2d at 859). This means that we must review the affidavit based on "a 'totality of the circumstances' determination, rather than a line-by-line scrutiny." *Id.* (quoting *Allen*, 211 F.3d at 973).

Brown argues that Officer Frederick's affidavit did not establish probable cause because it did not describe sufficiently the basis for the conclusion that the confidential informant was reliable. Frederick's affidavit stated that Frederick had been in contact with MacKellar of the Narcotics Enforcement Team, and had learned that the informant "had been used by [the Narcotics Enforcement Team] in numerous other investigations and provided information that ha[d] been corroborated and shown to be reliable by [the Narcotics Enforcement Team], the Michigan State Police and the Grand Rapids Police Department." Brown criticizes this portion of Frederick's affidavit for "containing no explanation indicating that [the informant] provided any information regarding drug trafficking or drug convictions."

Brown's attack on this portion of the affidavit seems hypertechnical. Frederick might have specified the exact nature of the information that the informant had provided to law enforcement agencies, but such a level of specificity is not necessary; a common sense reading of this portion of the affidavit suggests that the informant's information did pertain to drug trafficking (and drug convictions) precisely because the Narcotics Enforcement Team and other law-enforcement agencies had successfully used it.

Frederick's affidavit also stated that he was "personally aware that [the informant] ha[d] provided information that has led to the prosecution and conviction of at least two federal defendants in the Western District of Michigan, as well as other persons convicted by Michigan authorities." Brown criticizes this part of the affidavit for failing to "identify the types of crimes involved or any information identifying when the activity occurred or how [Frederick] was involved."

But, again, a commonsense reading would suggest that the crimes involved were drug related. Frederick might have added what crimes the convictions were for, but our cases do not require an affiant to provide such detail—"[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Allen*, 211 F.3d at 975.

Moreover, our precedent "clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as

reliable." *Greene,* 250 F.3d at 480 (citing *Allen*, 211 F.3d at 975; *Finch*, 998 F.2d at 352; *United States v. Dudek*, 560 F.2d 1288, 1292 (6th Cir. 1977)). In *Greene*, we upheld a search warrant in which the affiant, a law-enforcement officer, averred that the confidential informant had assisted federal and state law enforcement officials in the past and that this information had resulted in numerous felony arrests. *Greene*, 250 F.3d at 480.

Here, Frederick's statement that he was personally aware that the informant had provided information leading to convictions of at least two federal defendants suffices, under *Greene* and the cases it cites, to establish that the informant had given accurate information in the past and thus that the informant was reliable.

Brown also argues that Frederick failed to corroborate sufficiently the informant's statements. Brown argues that, while Frederick corroborated the informant's factual assertion that Brown was on parole, Frederick failed to corroborate that he was on a "tether" and totally failed to corroborate the informant's assertions about witnessing drug transactions at Brown's house.

Brown's argument fails because *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000) (en banc) *cert. denied*, 531 U.S. 907 (parallel citations omitted), does not invariably require an affiant to provide corroboration for a confidential informant's statements contained in an affidavit supporting a search-warrant application. *Allen*, 211 F.3d at 976. In *Allen*, we held that, if a confidential informant—personally known by the affiant to be reliable—alleged direct, personal observation of criminal activity, then the affiant would not have to include in the affidavit further corroboration of the informant's allegations. *Allen*, 211 F.3d at 976. We reasoned that a requirement that the police further corroborate such information from a confidential informant would aid lawbreakers, "as detectives tried to conduct surveillance in crack-ridden neighborhoods without themselves being detected and their suspects alerted." *Id.* Moreover, we added, "the additional time thus added to the process by mandating an independent police investigation, following a [confidential informant's] contact would provide a further

advantage to drug dealers' already highly mobile, hit-and-run operations." *Id.* We declined "to handicap the state in that way." *Id.*

Here, as in *Allen*, a confidential informant known to the officer to be reliable provided first-hand, detailed observations of cocaine—as well as what appeared to be Brown himself selling drugs—at Brown's own house. *Allen* did not require Officer Frederick or his colleagues to corroborate the confidential informant's observations by, for example, surveilling Brown's home.

Based on the totality of the circumstances, and given our necessarily deferential review of the magistrate's probable-cause determination, the district court did not err in denying Brown's motion to suppress.

Next, we address Brown's argument that the district court erred in denying his motion for a *Franks* hearing because the affidavit contained "false statements integral to the probable cause determination." We review the district court's denial of a hearing, under *Franks v. Delaware*, 438 U.S. 154 (1978), using the same standard as for the denial of a motion to suppress; that is, we review for clear error the district court's factual findings, and we review de novo the district court's conclusions of law. *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008) (quoting *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001) (citing *United States v. Hill*, 142 F.3d 305, 310 (6th Cir. 1998) (quotation marks omitted)). Here, the district court did not hold an evidentiary hearing; rather, the court decided Brown's *Franks* motion on the basis of what Brown said the evidence (a recorded conversation) would show if the district court were to grant his *Franks*-hearing motion. Therefore, we review de novo the district court's determination that Brown was not entitled to a *Franks* hearing.

To deserve a *Franks* hearing to challenge the validity of a search warrant, a defendant must make a substantial preliminary showing of two elements: first, a defendant must show that the affiant included—either knowingly and intentionally or with reckless disregard for the truth—a false statement in the affidavit. *Mastromatteo*, 538 F.3d at 545 (quoting *Graham*, 275 F.3d at 490; *Franks*, 438 U.S. at 155–56) (quotation marks omitted)).

Here, Brown proffered no evidence that the affiant, Frederick, either knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the affidavit. Brown claimed to have a recording of a conversation—which occurred sometime *after* the search warrant issued—between Brown's "personal associate" and the informant, in which the informant told the personal associate that Williams, Brown's live-in girlfriend, was not present at the barbecue where the informant allegedly saw Brown selling cocaine. Brown also claimed, as he does in his brief, that the informant would have testified that the informant spoke with Frederick and asked him why Frederick included in the affidavit the informant's (supposedly false) statement that Williams was present when the cocaine was in view. Brown claims that he has evidence that Frederick told the informant that Frederick erred in including this detail about Williams' presence in his affidavit; that, in Frederick's words, he "must have typed it up wrong." According to Brown, this shows that a "key fact in the affidavit was false or presented recklessly" such that it "casts doubt on all of the allegations contained in the affidavit."

This is hyperbole. At most, the informant's statement about Frederick saying that he "must have typed it up wrong" merely shows that Frederick was negligent in including the informant's statement that Williams was present when the drugs were in view.

But even if we were to hold that Frederick added the statement knowingly and intentionally, or with reckless disregard for its truth, Brown cannot prove the second element to entitle him to a *Franks* hearing—Brown cannot show that the probable-cause finding required the allegedly false statement. *Id.* For even if "'material that is the subject of the alleged falsity or reckless disregard is set to one side,'" as long as "'there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.'" *Mastromatteo*, 538 F.3d at 545 (quoting *Franks*, 438 U.S. at 171–72) (footnote omitted). An affidavit, with the false part excised, will still establish probable cause if it "'provide[s] the magistrate judge with a basis for finding there was

a fair probability that contraband or evidence of a crime would be found at' the stated location." *Mastromatteo*, 538 F.3d at 545 (quoting *Graham*, 275 F.3d at 504).

Here, even without Frederick's statement about Williams—that Williams was present when the cocaine was in view—the affidavit supports probable cause, given its richly detailed observations of drug activity at Brown's home (e.g., including the quantities of drugs, that they were in baggies, etc.).  Because Brown has failed to show both that Frederick himself—either knowingly and intentionally or with reckless disregard for the truth—made a false statement in the affidavit and that the probable-cause determination depended on the allegedly false statement, we must affirm the district court's judgment denying Brown a *Franks* hearing.

Lastly, we address Brown's argument that we should reverse his conviction of possession of a firearm in furtherance of a drug-trafficking crime because the government presented insufficient evidence to establish his guilt beyond a reasonable doubt.  His argument fails because Brown's failure to renew his motion for acquittal constricts our (already constricted) standard of review.

Generally, we review the sufficiency of the government's evidence to determine whether, "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'"  *United States v. White*, 932 F.2d 588, 589 (6th Cir. 1991) (per curiam) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (parallel citations omitted)).

But a defendant's failure, after the close of all the evidence at trial, to renew his motion for acquittal on the basis of the insufficiency of the evidence "limits our review to determining whether there was a 'manifest miscarriage of justice.'"  *United States v. Street*, 614 F.3d 228, 236 (6th Cir. 2010) (quoting *United States v. Childs*, 539 F.3d 552, 558 (6th Cir. 2008) (quoting *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998)).

Here, although the trial transcript shows that Brown's counsel did move, pursuant to Federal Rule of Criminal Procedure 29, for entry of a judgment of acquittal

on each of the counts—and specifically argued that the government failed to prove the "in furtherance" element required for a conviction of possession of a firearm in furtherance of a drug-trafficking crime—the transcript also shows that he failed to renew this motion at the close of all the evidence. At oral argument, Brown's attorney conceded this failure, which is "nearly fatal to his sufficiency challenge," *Street*, 614 F.3d at 236, because it constrains our review of the record to that of finding a manifest miscarriage of justice. We may only find a miscarriage of justice where "the record is 'devoid of evidence pointing to guilt.'" *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) (quoting *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998) (quoting *United States v. Robles-Pantoja*, 887 F.2d 1250, 1254 (5th Cir. 1989)).

Here, the record contains evidence pointing to Brown's guilt in violating section 924(c)(1)(A)(i), which provides for a mandatory five-year prison term for "any person who . . . in furtherance of any [drug-trafficking] crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A)(i). To prove a violation of this section, and specifically the "in furtherance element," the government must show "'a specific nexus between the gun and the crime charged.'" *United States v. Gill*, 685 F.3d 606, 611 (6th Cir. 2012) (quoting *United States v. Ham*, 628 F.3d 801, 808 (6th Cir. 2011)). To determine whether this specific nexus exists, we consider six factors—the *Mackey* factors—first adopted in *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001), cert. denied, 534 U.S. 1097 (2002). We consider this non-exclusive list of six factors to help distinguish possession in furtherance of a crime from "innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard." *Id.* at 462.

For example, in *Mackey*, we concluded that a reasonable jury could infer that the purpose of a firearm was to provide defense or deterrence in furtherance of the drug trafficking for which a defendant was arrested. *Id.* at 462–63. We so concluded because the gun was a loaded, short-barreled shotgun found in the living room of a crack house, easily accessible to the defendant, and which was located near scales and razor blades (used to process drugs for sale). *Id.* at 462. The police stopped the defendant near the gun, and found that he possessed cocaine and a large amount of cash. *Id.*

The prosecution did provide evidence supporting each of the six *Mackey* factors and pointing to Brown's guilt in possessing a gun that he used in furtherance of his selling cocaine. Under *Mackey*, first we consider whether the gun was "'strategically located so as to be quickly and easily available for use during [a drug] transaction." *Gill*, 685 F.3d at 611 (quoting *Ham*, 628 F.3d at 808) (quoting *Mackey*, 265 F.3d at 462)). The jury heard testimony from Frederick, who testified that the gun's location under the mattress in the bedroom constituted a strategic location: despite the bedroom's second-floor location, Frederick testified that the house was small enough so that someone on the first floor could retrieve the gun within ten to fifteen seconds. Frederick further testified that the gun was found within several feet of $4,700 in cash, and Brown's counsel conceded as much at oral argument. From such facts a jury could reasonably infer that the gun was strategically located to be quickly and easily used during a drug deal.

Second, we consider whether the gun was loaded. *Gill*, 685 F.3d at 611 (quoting *Ham*, 628 F.3d at 808–809) (quotation marks omitted). The jury heard Frederick testify that the gun was loaded—there were "rounds in the chamber," so that the gun was "ready to go."

Third, we consider the type of weapon. *Id*. The jury heard the officer who found the pistol testify that it was a .40 caliber Beretta, a high-powered gun with the serial number scratched off, a characteristic that, as the officer testified, in his experience meant either the gun had been used in a crime or was going to be used in a crime.

Fourth, we consider the legality of the weapon's possession. *Id*. Brown conceded at trial before the jury that he had a prior felony conviction, therefore making his possession of the pistol illegal (and Brown does not appeal his conviction for felony possession).

Fifth, we consider the type of drug activity conducted. *Id*. The jury heard an officer testify that Brown had an eighth of an ounce of crack cocaine in his pocket when he was arrested. The jury also heard an officer testify that Brown admitted he would "whip" or convert powder cocaine into crack cocaine because he made more money that

way, and that he sold eight balls, quarter ounces, and smaller amounts in the Holland, Michigan area. Another officer testified that he found a document which his experience led him to believe was a ledger used to record drug transactions.

Sixth, we consider the time and circumstances under which the firearm was found. *Id.* Here, the jury heard testimony that law-enforcement officers found the gun during the same search in which they found the cocaine.

In sum, the prosecution proffered enough evidence that Brown kept the loaded Beretta (with a filed-off serial number) in a strategic location to provide defense or deterrence in furtherance of drug trafficking. The jury's conviction of Brown on this count did not constitute a manifest miscarriage of justice.

For the preceding reasons, we **AFFIRM** the district court's judgment.