**NOT RECOMMENDED FOR PUBLICATION**
File Name: 13a0920n.06

No.  12-4353

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **United States of America,** | ) | |
| | ) | **FILED** |
| **Plaintiff-Appellee,** | ) | Oct 25, 2013 |
| | ) | DEBORAH S. HUNT, Clerk |
| **v.** | ) | |
| | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| **Aristotle R. Matsa,** | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |
| | ) | |

Before:       MERRITT, GIBBONS, and McKEAGUE, Circuit Judges.

**MERRITT, Circuit Judge**.  A jury found Aristotle "Rick" Matsa guilty of various charges for concealing his assets from taxing authorities and obstructing an investigation of the concealment. Matsa now challenges his conviction on three grounds: 1) the district court's decision to remove his counsel of choice violated his Sixth Amendment rights; 2) the prosecution engaged in systematic misconduct that deprived him of due process; and 3) the authorities obtained an invalid search warrant by failing to inform the magistrate about their confidential informant.  For the following reasons, the judgment of the district court is affirmed.

## I.  Background

Matsa was a licensed real-estate broker and lawyer in Ohio.  He routinely reported losses or minimal income from his businesses, such that from 1985 to 2006 he paid a total of $107 in federal income tax.  His legal troubles began when Chrissoula Matsa, his wife at the time with whom he was

undergoing divorce proceedings, tipped off law enforcement to his shady dealings. A subsequent investigation by the federal grand jury revealed a number of dubious practices, including the use of phony trusts to mask personal assets, the failure to report rental income, and the transfer of property (though not actual control) to friends and relatives. During the investigation, Matsa failed to comply fully with the government's subpoena of his records. Based on this conduct, the grand jury indicted Matsa for one count of corrupt interference with administration of the internal revenue laws, 26 U.S.C. § 7212(a); fifteen counts of assisting preparation of false tax returns, 26 U.S.C. § 7206(2); one count of failing to report a foreign bank account, 31 U.S.C. §§ 5314, 5322(b); one count of conspiracy to obstruct justice, 18 U.S.C. § 371; two counts of witness tampering, 18 U.S.C. § 1512(b); one count of making a false statement, 18 U.S.C. § 1001; and one count of obstruction of justice, 18 U.S.C. § 1503(a). The grand jury also indicted Matsa's mother for conspiracy to obstruct justice and tried them together. A jury found Matsa guilty on all counts after a five-week trial, and the court sentenced him to a term of 85 months' imprisonment. This appeal followed.

## II. Removal of Counsel

The removal of Matsa's counsel, Thomas Tyack, concerns the obstruction counts. As part of the grand jury investigation, the government subpoenaed Matsa for records connected to his various law offices, businesses, and trusts. Matsa responded through Tyack, who wrote a letter to the prosecutor stating that Matsa did not control most of the requested documents. However, a later search of Matsa's home and office pursuant to a warrant revealed documents covered by the subpoena. The obstruction charges were based in part on Matsa's response to the subpoena through Tyack.

The government moved for Tyack's removal as counsel, arguing that his role in sending the letter would make him a necessary witness at trial. The district court conducted two hearings on the question and ordered two rounds of briefing. During the course of these proceedings, a compromise was suggested whereby Matsa would stipulate to the contents of the letter without naming Tyack and would also stipulate to waive any sort of defense claiming reliance on Tyack's advice. By the first stipulation, it was intended that the jury would not learn of Tyack's role in sending the letter and thereby draw conclusions about his trial performance. The second stipulation was intended to remove the possibility that the government would call Tyack to rebut Matsa's claim that he responded to the subpoena solely based on Tyack's advice. However, Matsa refused to accept the stipulations on the ground that they were too broad, and no further compromise was reached that might have narrowed the wording.

The district court granted the government's motion and removed Tyack as counsel (though neither the court nor the prosecutor accused Tyack of wrongdoing). It held that Matsa was likely to raise an advice-of-counsel defense and that Tyack was therefore likely to be called as a witness at trial. The court found that disqualification would not cause Matsa substantial hardship because Tyack could help substitute counsel and because trial had been continued. Citing Second Circuit precedent, the court alternatively held that Tyack would be acting as an "unsworn witness" because he might present his first-hand knowledge of the facts without allowing the government an opportunity for cross-examination.

The Sixth Amendment's right to counsel of choice is not absolute. There is a presumption that non-indigent criminal defendants will have counsel of choice, but that presumption may be

overcome by a showing of "serious potential" that counsel's continued representation will create

a conflict of interest. *United States v. Wheat*, 486 U.S. 153, 164 (1988). A district court has broad

discretion to remove counsel for a potential conflict, even if the defendant wishes to waive the

conflict. The Sixth Circuit applies a deferential standard of review to a district court's judgment that

removal is required. Such a judgment will be reversed only if "arbitrary" or "without adequate

reasons." *United States v. Swafford*, 512 F.3d 833, 839 (6th Cir. 2008) (quoting *United States v.*

*Mays*, 69 F.3d 116, 121 (6th Cir. 1995)).

Considering the facts of this case, the district court's decision to remove Tyack was not

arbitrary. Tyack was closely involved in the alleged obstruction through his response to the

government's subpoena. Had the issue been limited to the question of whether the contents of the

letter were true—that is, whether Matsa was in fact the custodian of the records requested in the

subpoena—then the government might have established its case without having to call Tyack to the

stand. But Matsa's express refusal to waive an advice-of-counsel defense raised a realistic

possibility that Matsa would attempt to shift blame to Tyack rather than defend the truth of the

statements in the letter. Because Matsa and Tyack were the only two people privy to the

circumstances surrounding the response to the subpoena, the government was likely to require

Tyack's testimony. As the district court correctly recognized, a "lawyer shall not act as advocate

at a trial in which the lawyer is likely to be a necessary witness unless . . . disqualification of the

lawyer would work substantial hardship on the client." ABA Model Rules of Prof'l Conduct

3.7(a)(3). It was not arbitrary for the district court to conclude that substitution of counsel would

not work significant hardship, even though Tyack had represented Matsa for a number of years and

was very familiar with his affairs.  Tyack would be available to Matsa's new counsel, and plenty of time remained before trial.

Matsa's arguments to the contrary are not persuasive.  He cites a number of district court opinions to argue that the court in this case might have adopted alternatives to disqualification. However, it was within the district court's discretion to choose disqualification given the facts. Matsa also claims that the government pursued removal in bad faith and that the district court failed to consider that possibility.  This argument reflects the requirement that a court consider whether the government has sought "to 'manufacture' a conflict in order to prevent a defendant from having particularly able defense counsel at his side."  *Wheat*, 486 U.S. at 163.  Though the court did not find, in so many words, that the government pursued removal in good faith, this omission is not fatal to its ruling.  The record gives no reason to believe that the government "manufactured" the conflict that led to Tyack's removal or that, as Matsa puts it in his brief, the motion to remove was "purely tactical."

Indeed, Matsa makes no colorable allegation that the government appended the obstruction charges to the indictment simply to get Tyack off the case.  His primary complaint, rather, is that the government's proposed stipulations were too broad to have been pursued in good faith—in particular, that they would have forced Matsa to waive the advice-of-counsel defense as to all counts in the indictment.  But if an advice-of-counsel defense would have required Tyack's testimony, there would have been a conflict regardless of whether the defense was raised against the obstruction charges or against some other count.

In sum, our review of the record and of the facts of this case shows that the district court did not abuse its discretion by removing Tyack as counsel.[1]

### III. Prosecutorial Misconduct

Matsa claims a potpourri of prosecutorial bad acts that he believes require reversal of his conviction. The disputed conduct occurred both prior to and during trial. Additionally, Matsa claims the cumulative effect of the prosecution's conduct warrants reversal.

### A. Pretrial Conduct

Matsa identifies four categories of pretrial prosecutorial misbehavior: 1) intimidation of witnesses before the grand jury; 2) obstruction of Matsa's pre-deposition access to a witness who was the named beneficiary of one of Matsa's trusts; 3) threats toward defense counsel; and 4) violation of attorney-client privilege.[2] Matsa raised these arguments in various motions to dismiss the indictment, which the district court denied. A federal court's authority to dismiss an indictment stems from its supervisory powers. *See United States v. Williams*, 504 U.S. 36, 46 (1992). Refusal to dismiss an indictment is reviewed for abuse of discretion. *United States v. Lee*, 359 F.3d 412, 417 (6th Cir. 2004).[3]

---

[1] Because we hold that the particular facts of the case justified the district court's conclusion that Tyack was likely to testify, we decline to address the district court's broader, alternative rationale that Tyack was an "unsworn witness." *Cf. United States v. Locascio*, 6 F.3d 924, 933–34 (2d Cir. 1993).

[2] Matsa also argued before the district court that the prosecutor acted improperly by threatening to indict his mother if he did not plead guilty—a threat that came to fruition. Though Matsa mentions this incident in the facts section of his brief, he does not develop any sort of argument about why it requires reversal of his conviction. We therefore do not consider whether the prosecutor acted improperly by threatening to indict Matsa's mother. *See Treesh v. Bagley*, 612 F.3d 424, 434 (6th Cir. 2010).

[3] Matsa argues that the district court should have assessed pretrial misconduct by using the test articulated in *United States v. Deitz*, 577 F.3d 672 (6th Cir. 2009). However, *Deitz* applies to claims of misconduct at trial. When alleged misconduct occurs prior to trial, the question of whether to dismiss the indictment is left to the district court's

**1. Witness intimidation**. Matsa claims the prosecutor acted improperly by accusing several witnesses of lying in their testimony to the grand jury. For example, in questioning one witness before the grand jury, the prosecutor said, "Now you lied to us within ten minutes today." Matsa also alleges that, during the grand jury proceedings, the prosecutor told another witness in the hallway that he planned to "throw swords" and that the witness might not wish to fall on a sword for Matsa.

Though Matsa claims these actions deprived him of due process by forcing witnesses to conform their testimony to the prosecutor's will, the facts alleged do not state a due process violation. An individual has no constitutional right to present witnesses at a grand jury proceeding, *see Williams*, 504 U.S. at 51–52, and Matsa did not renew his objection at trial. Rather, Matsa's claim must be analyzed under the standard established in *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988). Under this standard, an indictment should be dismissed for prosecutorial misconduct before the grand jury only "'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 256 (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986)).

Assuming that the prosecutor's comments were indeed improper, the district court did not abuse its discretion by finding a lack of prejudice. As the parties agree, the comments at issue were made before a predecessor grand jury—not the grand jury that ultimately returned the indictment.

discretion.

Therefore, any violation did not "substantially influence[] the grand jury to indict." *Bank of Nova Scotia*, 487 U.S. at 256.[4]

**2. Obstruction of access to a witness**. Matsa alleges that the government denied him a fair trial by blocking access to a witness prior to the witness's deposition. However, Matsa does not adequately explain the circumstances of the alleged obstruction, and the government disputes it altogether. Even if the government in fact blocked access to the witness, Matsa still was able to question the witness at the deposition itself. Matsa does not explain how a defendant is denied a fair trial when he actually had an opportunity to question a witness. The district court did not abuse its discretion by refusing to dismiss the indictment on this ground.

**3. Threats toward defense counsel**. Matsa complains of several aggressive statements the prosecutor made to his attorneys prior to trial. For example, the prosecutor threatened to report Tyack to the Ohio Bar Association and told another attorney that "your client better watch out and you better watch out too." The attorneys testified at a motion hearing that these statements were "chilling" and caused them to proceed with "great caution" in discovery. The district court found that the comments were improper but did not prejudice Matsa such as to require dismissal of the indictment. This was not an abuse of discretion. Matsa points to case law condemning personal

---

[4] Though it has no bearing on whether the district court's pretrial ruling was correct, several of the witnesses in question testified for the government at Matsa's trial and admitted they lied to the grand jury. Matsa suggests that the witnesses' change of heart might have stemmed from coercion in the grand jury proceedings. However, Matsa did not claim below that the government deprived him of trial witnesses, and the issue on appeal is limited to whether the district court erred by refusing to dismiss the indictment in its pretrial ruling. Matsa did submit a motion for new trial in which he incorporated his pretrial misconduct motion and claimed cumulative prejudicial effect. This argument is addressed in Part III.C below.

attacks on defense counsel during trial, but the statements in question did not occur before the jury at trial. Matsa received—and continues to receive—vigorous representation.

**4. Attorney-client privilege**. A search of Matsa's home and office yielded some 300,000 documents and recordings, many of which involved Matsa in his capacity as an attorney. Matsa moved to suppress privileged material discovered in the search and to dismiss the indictment because privileged material was used to obtain it. The district court held that, even if it was otherwise privileged, the material in question fell within the crime-fraud exception to the privilege because it contained conversations in which Matsa attempted to obstruct the investigation and tamper with witnesses. *See United States v. Zolin*, 491 U.S. 554, 562–63 (1989) (discussing crime-fraud exception). The court therefore refused to dismiss the indictment. On appeal, Matsa simply repeats his claim that the government used privileged material and specifies no legal or factual error in the district court's holding. Accordingly, refusal to dismiss the indictment or bar use of the records in question was not an abuse of discretion.

## B. Conduct at Trial

Matsa claims two categories of misconduct at trial: 1) that the prosecutor improperly expressed his personal beliefs through comments and facial expressions and 2) that the prosecutor's questioning of witness Ross Gillespie improperly solicited Gillespie's commentary on Matsa's truthfulness. We review this claim *de novo*. *United States v. Deitz*, 577 F.3d 672, 694 (6th Cir. 2009). In determining whether reversal for prosecutorial misconduct is warranted, the key question is whether the prosecutor acted both improperly and flagrantly so, which in turn requires assessing the misleading nature, extent, and deliberateness of the conduct alongside the overall strength of the

government's case. *Id.* Flagrant misconduct requires reversal, but non-flagrant violations do not unless the government's case was weak and the court failed to cure the violation. *Id.*

**1. Commentary and facial expressions**. Matsa points to two specific episodes of improper commentary. In the first, the prosecutor grunted, snickered, and shook his head while questioning a witness. In a sidebar conference, the trial judge admonished the prosecutor to be careful. Matsa does not claim that this sort of conduct pervaded the proceedings, and isolated incidents during a five-week trial do not require reversal. *United States v. Collins*, 78 F.3d 1021, 1039 (6th Cir. 1996).

The second episode regards the prosecutor's cross-examination of Matsa. During questioning, the prosecutor suggested on multiple occasions that Matsa was "blaming" others for his conduct. Viewed as a whole, the prosecutor's questioning, while charged, was not flagrantly improper. The suggestion that Matsa was blaming others was not geared to mislead but rather to attack Matsa's direct testimony, a proper function of cross-examination. Matsa had an opportunity to respond—and did respond—to the notion that he was shifting responsibility. Moreover, the judge provided a cure by striking one comment from the record. Argumentative questioning of this nature is not the sort of commentary that has required reversal in the past. *Cf. United States v. Carter*, 236 F.3d 777 (6th Cir. 2001) (requiring new trial where prosecutor's closing argument mischaracterized evidence and accused defense counsel of lying). The prosecutor's style of cross-examination may not have been ideal, but it did not render the trial so unfair as to create reversible error.

**2. Questioning of Ross Gillespie**. Gillespie was a former Matsa employee who testified for the government. During direct examination, the prosecutor played portions of tapes in which Matsa discussed his firm's handling of a particular trust and Gillespie's role as an employee at the

firm. The prosecutor then elicited Gillespie's testimony that statements in the recordings were not truthful. Matsa argues that this questioning was improper because "credibility determinations are meant for the jury, not witnesses." *United States v. Dickens*, 438 F. App'x 364, 370 (6th Cir. 2011). There is indeed a body of case law establishing that one witness should not be asked directly whether another witness is lying—particularly where a prosecutor seeks to pit a testifying defendant against a law enforcement officer's inculpatory testimony. *See id.* at 369–70. However, the questioning at issue here did not approach the line drawn by that case law. The prosecutor did not ask Gillespie to comment on the veracity of Matsa's trial testimony. Rather, he questioned Gillespie about practices of Matsa's firm based on Gillespie's personal knowledge. If Gillespie's testimony punctured Matsa's credibility, that is because the charges put Matsa's honesty at issue. There was nothing improper about this line of questioning.

## C. Cumulative Effect

Matsa claims the cumulative effect of the behavior discussed above requires reversal. He raised this claim in a motion for a new trial, which the district court rejected. When a defendant raises a claim of cumulative prosecutorial misconduct, a new trial will not be granted unless the defendant can show "that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004). Matsa cannot satisfy this standard. Matsa has identified some possible isolated improprieties in the prosecutor's conduct at trial, but this conduct was not so pervasive as to require a new trial. Moreover, Matsa's argument that the prosecutor's pretrial conduct rendered the entire five-week trial unfair is unconvincing. The district court did not err by refusing to grant a new trial.

## IV. Suppression of Evidence

Acting pursuant to a search warrant, law enforcement agents removed about sixty boxes of documents from Matsa's home and office. Matsa moved to suppress this evidence for lack of probable cause to support the warrant and moved also for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). The request for a *Franks* hearing was based on the claim that the warrant application contained false and misleading information from a confidential source whose identity was not revealed to the magistrate. This source turned out to be Matsa's wife at the time. The district court took some testimony but ultimately declined to hold a complete *Franks* hearing and rejected the motion to suppress.

Though Matsa cites *Franks* in his brief, he does not claim the district court erred by refusing to hold a *Franks* hearing. Rather, he argues that "this Court should find that the totality of the circumstances do not support a finding of probable cause" because the agent who submitted the warrant application knew Matsa's wife was unreliable yet failed to corroborate her information. Therefore, the only question before us is whether the warrant application established probable cause. *Cf. United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010).

When this court reviews a denial of a motion to suppress, it reviews the district court's conclusions of law *de novo* and its findings of fact for clear error. *United States v. Brown*, 715 F.3d 985, 989 (6th Cir. 2013). However, a magistrate's probable cause determination will only be reversed if the magistrate's decision to issue the warrant was arbitrary. *Id.* There is probable cause to issue a warrant when there is a fair probability, given the totality of the circumstances, that evidence of a crime will be found in the place to be searched. *Id.*

-12-

When a warrant affiant depends on a confidential informant who is not known to be reliable, the affiant should corroborate the informant's story. *See Thomas*, 605 F.3d at 307. Matsa argues that the affiant here failed in this duty, but the district court made a factual finding to the contrary. There is no apparent error in this finding. Though Matsa mines discrepancies between the informant's story and the affiant's corroboration, this smacks of the sort of "hypertechnical" analysis of probable cause that this court has clearly rejected. *See, e.g.*, *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004).

More importantly, review of the warrant application as a whole reveals that there was ample cause to issue the warrant. The informant's information amounted to two pages of a thirty-six page application, which also relied on the affiant's personal surveillance, documentary evidence, and interviews with other named Matsa associates, including one who admitted lying to the grand jury at Matsa's behest. The magistrate's decision to issue the warrant was not arbitrary and the district court did not err by refusing to suppress the evidence.

## V. Conclusion

The district court did not improperly remove Matsa's attorney, because that attorney was likely to become a witness at trial. Moreover, the prosecutor's conduct does not warrant reversal and Matsa's suppression argument is meritless. Accordingly, the judgment of the district court is affirmed.