NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0205n.06

No. 24-1377

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 17, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| REGINALD HITCHCOCK, | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: GIBBONS, WHITE, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. When seeking a warrant to search Reginald Hitchcock's home, an officer told a judge that an informant had regularly bought drugs from Hitchcock and that Hitchcock's girlfriend had seen drugs at the home. After the judge issued the warrant, officers recovered fentanyl, cocaine, and ammunition. A jury convicted Hitchcock of drug and firearm offenses. He now argues that the officer's affidavit in support of the warrant did not allege enough facts to establish probable cause that the police would find drugs at his home. He adds that the district court at least should have held an evidentiary hearing over whether the affidavit misstated facts. We agree with the district court's decision to reject both claims. We thus affirm.

I

This case started with a drug-trafficking investigation in Detroit, Michigan. Branden Jousma—who has been a task-force officer with the Drug Enforcement Administration since

2015—led the investigation. *See* Aff., R.26, PageID 164. Ultimately, Jousma sought a warrant to search a home on Cloverlawn Avenue. *See id.* Because judges must rely only on allegations that an officer makes under oath when deciding whether to issue a warrant, we will describe the facts using the allegations from Jousma's affidavit. *See United States v. Davis*, 970 F.3d 650, 665–66 (6th Cir. 2020); *United States v. Sumlin*, 956 F.3d 879, 885 (6th Cir. 2020).

On November 16, 2020, Jousma learned about a drug dealer nicknamed "Rocket" from a confidential informant. Aff., R.26, PageID 166. Rocket had sold the informant "heroin and powder cocaine" many times over the last month. *Id.* The informant suggested that these transactions typically occurred in the same way. *Id.* Rocket drove a white Chevrolet Traverse to a location on Kentucky Street north of Schoolcraft Road. *Id.* He and the informant then engaged in a "window to window" exchange while sitting in their cars on Kentucky Street. *Id.* The informant could even recall the Traverse's license plate number. *Id.*

By putting that number into a police database, Jousma quickly identified Hitchcock as the Traverse's registered owner. *Id.* Hitchcock also had a history of drug offenses. *Id.*, PageID 167. Jousma showed Hitchcock's picture to the informant. *Id.*, PageID 166. The informant identified Hitchcock as Rocket. *Id.* Jousma also located the Traverse parked at the Cloverlawn home—six blocks from the usual location of the drug deals on Kentucky Street. *Id.*

Jousma and other officers started to monitor this home on the same day that Jousma spoke to the informant. *Id.* They watched Hitchcock leave the home with a woman in the Traverse. *Id.* Hitchcock drove into a parking lot off Schoolcraft Road. *Id.* He then engaged in "what appeared to be a hand to hand drug transaction" with someone in another vehicle. *Id.* After this suspected exchange, an officer with the Michigan State Police stopped Hitchcock. *Id.* The woman in the Traverse (who turned out to be Hitchcock's girlfriend) had a warrant out for her arrest for

2

absconding from parole. *Id.* While searching this woman during her arrest, the officer found a small amount of heroin. *Id.* He otherwise let Hitchcock go. *Id.*

That night, Jousma and two other officers interviewed Hitchcock's girlfriend. *Id.* She asserted that she had lived at the Cloverlawn home with Hitchcock for the last six months. *Id.* She suggested that Hitchcock had provided her the heroin in her possession at the time of her arrest and that he had sold heroin to the driver that he met in the parking lot. *Id.*, PageID 167. That said, she admitted that this meeting location had been unusual. *Id.* Hitchcock had instead been making about $7,000 per day "selling heroin, cocaine and crack to people who he [met] on Kentucky Street." *Id.*, PageID 166–67. Hitchcock's girlfriend also disclosed that he had heroin, cocaine, and cash in a "hidden compartment in the staircase" of their Cloverlawn home. *Id.*, PageID 167. Without Hitchcock's knowledge, she had taken a "chunk" of the heroin earlier that morning. *Id.*

The next afternoon, another officer watched Hitchcock leave the Cloverlawn home, travel to Kentucky Street, and "meet window to window" with a vehicle. *Id.* This officer believed that he saw Hitchcock engage in another "hand to hand narcotic transaction" at that time. *Id.* Yet after a traffic stop of the suspected buyer's vehicle, officers uncovered no drugs. *Id.* Jousma opined based on his experience that the buyer had likely "disposed of the narcotics" before the stop. *Id.*

Sometime later that day, Jousma used all this information to seek a warrant to search the Cloverlawn home. A state judge issued the warrant. Officers executed it the next day. They uncovered a substantial amount of fentanyl and cocaine as well as ammunition in the hidden compartment that Hitchcock's girlfriend had told them about.

The government charged Hitchcock with three counts: possession with the intent to distribute at least 40 grams of fentanyl; possession with the intent to distribute at least 500 grams of cocaine; and possession of ammunition as a felon. *See* 21 U.S.C. § 841(a)(1); 18 U.S.C.

§ 922(g)(1). Before trial, Hitchcock moved to suppress the evidence found at the home. He made two claims. He first argued that Jousma's affidavit did not establish probable cause to search the home. He next argued that the affidavit included false statements entitling him to an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). The district court denied his motion.

Hitchcock went to trial. A jury convicted him of all counts. The district court sentenced him to 180 months' imprisonment.

II

Hitchcock renews his claims that Jousma's affidavit did not establish probable cause to search the home and that it contained inaccuracies that entitled him to a "*Franks* hearing."

A. Probable Cause

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. amend. IV. This text requires a "probable cause" connection between the "place to be searched" and the "things to be seized." *Id.*; *see United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021). That is, a "fair probability" must exist that officers will find the items they want to seize at the place they want to search. *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024) (en banc) (citation omitted); *see Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Drug-trafficking investigations routinely implicate this "nexus" requirement to connect illegal drugs to a specific location. *See United States v. Miller*, 850 F. App'x 370, 373 (6th Cir. 2021). Our caselaw, for example, has long debated when officers have probable cause to search a drug dealer's home based only on evidence of the dealer's distribution. *See Reed*, 993 F.3d at 447–49; *see also Sanders*, 106 F.4th at 464–66. But "our cases leave no doubt" that a nexus exists

4

when an officer's affidavit connects a dealer's trafficking to a home in a more specific way. *Miller*, 850 F. App'x at 373. So we have held that probable cause existed when a drug dealer went to a drug transaction from the place that the officers sought to search, thereby suggesting that the dealer stored drugs at that location. *See id.* at 373–74; *see also Sanders*, 106 F.4th at 463; *United States v. Coleman*, 923 F.3d 450, 457 (6th Cir. 2019). And we have held that probable cause existed when a reliable informant with personal knowledge disclosed that a dealer possessed drugs at a home. *See United States v. Bell*, 2022 WL 59619, at *2–3 (6th Cir. Jan. 6, 2022); *United States v. Brown*, 732 F.3d 569, 572–74 (6th Cir. 2013); *United States v. Allen*, 211 F.3d 970, 971–72, 976 (6th Cir. 2000) (en banc).

These standards show that Jousma had probable cause to search the Cloverlawn home. According to his affidavit, Hitchcock's girlfriend said that she had lived with Hitchcock at the home for six months. *See* Aff., R.26, PageID 166. She said that Hitchcock regularly sold heroin and cocaine. *See id.*, PageID 166–67. And she said that Hitchcock stored a large amount of these drugs at their home. *See id.*, PageID 167. Indeed, she suggested that she had stolen some heroin earlier that day. *See id.* This information from a "known" individual may well have supplied probable cause on its own. *Allen*, 211 F.3d at 976. But Jousma "corroborated" the information with a lot more details. *Bell*, 2022 WL 59619, at *3. Among other things, an officer had found heroin on Hitchcock's girlfriend when arresting her. Aff., R.26, PageID 166. A confidential informant had told Jousma that he bought drugs from Hitchcock. *Id.* And Jousma had watched Hitchcock engage in what looked like a drug transaction from his car. *Id.* Hitchcock also had a prior narcotics conviction and was out on bond in a pending drug-trafficking case. *Id.*, PageID 167; *see United States v. Christian*, 925 F.3d 305, 309 (6th Cir. 2019) (en banc). These collective

5

facts created a "fair probability" that the home would contain illegal drugs, so they established probable cause to search it. *Sanders*, 106 F.4th at 461 (citation omitted).

In response, Hitchcock challenges the confidential informant. He argues that the informant's claims did not tie Hitchcock's drug dealing to the Cloverlawn home and that Jousma did not corroborate the informant's allegations with enough other information. But Hitchcock says nothing about his girlfriend's statement that he had a secret cache of drugs at the home. That omission speaks volumes. Her statement directly connected his home to his drug dealing. And the other information that Jousma gathered corroborated her allegations. Jousma thus established the required nexus through means other than reliance on the informant.

## B. *Franks* Hearing

In *Franks*, the Supreme Court held that the Fourth Amendment allows defendants to challenge the veracity of the affidavit an officer submits to obtain a search warrant. *See* 438 U.S. at 155–56. If a false statement in the affidavit mattered to the judge's issuance of the warrant, a court should exclude evidence recovered based on the later search. *See id.* at 156. But defendants can obtain an evidentiary hearing (or "*Franks* hearing") to prove this type of Fourth Amendment violation only if they make a "substantial preliminary showing" of three things. *Id.* at 155; *United States v. Crawford*, 943 F.3d 297, 309 (6th Cir. 2019) (citation omitted). They must show that the challenged affidavit contained a false statement or material omission. *See Franks*, 438 U.S. at 155; *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). They must show that the officer who signed the affidavit included the falsehood or omitted the material fact with a culpable state of mind. *See Franks*, 438 U.S. at 155–56; *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). And they must show that the false statement or material omission made a difference to the

question whether the affidavit established probable cause. *See Franks*, 438 U.S. at 156; *Crawford*, 943 F.3d at 309–10.

In this case, Hitchcock argues that Jousma's affidavit contained two false statements and made two material omissions. But the district court correctly held that Hitchcock did not make the required "preliminary showing" to support these claims. *Franks*, 438 U.S. at 155.

*False Statements*. Hitchcock argues that the affidavit misstated two facts. He first suggests that Jousma lied about how he obtained the Traverse's license plate number. Jousma's affidavit stated that the confidential informant provided this information. According to Hitchcock, though, Jousma later testified at the preliminary hearing that he "found" a Traverse in the general area with this license plate number. Appellant's Br. 21 (citation omitted). But Hitchcock's argument misreads the preliminary-hearing transcript. Jousma testified on direct examination that he "was given . . . the license plate number" without identifying his source. Tr., R.26, PageID 200. On cross examination, he initially suggested that he had testified on direct that he found the license plate number while driving around. *Id.*, PageID 204. But he immediately corrected himself by noting that the informant had given him the number. *Id.*, PageID 204–05. So his preliminary-hearing testimony comported with his affidavit. And Hitchcock presents no "proof" that Jousma lied about the license plate number. *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).

Hitchcock next argues that Jousma lied in the affidavit when he said that he saw Hitchcock engage in a hand-to-hand drug transaction. Appellant's Br. 22. Hitchcock reasons that Jousma admitted at the preliminary hearing that he did not see drugs pass between the two cars. Tr., R.26, PageID 212. This time, though, Hitchcock misreads the affidavit. It did not purport to state that Jousma had seen the drugs. It stated only that Jousma "observed Hitchcock do *what appeared to be* a hand to hand drug transaction." Aff., R.26, PageID 166 (emphasis added). So Jousma's

7

affidavit again comports with his preliminary-hearing testimony. Besides, Jousma later interviewed Hitchcock's girlfriend, who told him that a transaction had indeed occurred. *Id.*, PageID 167. And Hitchcock again identifies no "proof" to the contrary. *Bennett*, 905 F.2d at 934.

*Material Omissions.* Hitchcock next argues that Jousma's affidavit omitted details about his girlfriend. After her arrest she had a "panic attack and could not breath[e]." Rep., R.26, PageID 191. So the officer with the Michigan State Police left her at a fire station, and she traveled to the police station for her interview with Jousma later that night in an unknown way. *Id.* She also told Jousma that she had been living with Hitchcock at the Cloverlawn home, but her parole office was in another part of Detroit. Hitchcock criticizes Jousma for omitting both his girlfriend's panic attack and the location of her parole office from the affidavit. Appellant's Br. 22–23. Some of our cases have suggested that a defendant must meet a "higher" intent element when seeking to challenge an affidavit through these types of omissions. *See United States v. Davis*, 84 F.4th 672, 681–82 (6th Cir. 2023) (citation omitted). But we need not consider that question here. Hitchcock's claim fails because these facts (if they had been included in the affidavit) would not have eliminated the probable cause that existed to search the home based on the affidavit's many other incriminating details. *See Crawford*, 943 F.3d at 309–10.

All told, Hitchcock did not make a "substantial preliminary showing" that Jousma included false statements or omitted material information from the affidavit. *Franks*, 438 U.S. at 155. The district court thus rightly declined his request to hold a *Franks* hearing.

We affirm.