NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0480n.06

No. 24-3906

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Oct 20, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| PATRICK BRADLEY, | ) ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: KETHLEDGE, LARSEN, and BLOOMEKATZ, Circuit Judges.

KETHLEDGE, Circuit Judge. Patrick Bradley appeals the district court's denial of his motion to suppress drug-trafficking evidence that the police found at his residence. We reject his arguments and affirm.

I.

In January 2020, Ohio police intercepted a package containing one pound of methamphetamine on its way to a house on Nicholas Place in Canton, Ohio. The package was addressed to "Cindy Williams." Law enforcement conducted a controlled delivery of the drugs, leaving the package on the doorstep after no one answered the door. Patrick Bradley soon walked out of the house, picked up the package, and put it in a trash can.

Later that year, three informants told police that Bradley was selling methamphetamine and cocaine. An FBI task force then placed Bradley under surveillance.

In November 2020, Bradley sold two ounces of cocaine to a police informant. The informant met with Bradley four times to make installment payments for the drugs. On one occasion, Bradley left the house on Nicholas Place to meet the informant for payment; on another, Bradley met the informant to receive payment and then returned to that same house. When he met the informant, Bradley drove a car registered to the Nicholas Place address.

Bradley again sold drugs to the police informant two months later. He and the informant spent a day haggling over the sale via call and text. Bradley made one of these calls from the Nicholas Place house. Bradley offered to sell the informant one pound of methamphetamine; the informant told Bradley that he wanted only an ounce. That evening, Bradley left Nicholas Place, made several stops around Canton, and then met the informant to sell him the methamphetamine. He again returned to the Nicholas Place house.

Ohio police applied for a warrant to search the house for drugs, drug proceeds, and other evidence of drug trafficking. A state judge granted the warrant that night. Police executed the search just after midnight, seizing nearly 300 grams of methamphetamine, 144 grams of cocaine, 52 grams of MDMA, and 33 grams of an MDMA and cocaine mixture from the home.

A grand jury thereafter indicted Bradley on three counts of possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and (b)(1)(C). Bradley moved to suppress the evidence found at the Nicholas Place house, arguing that the warrant was not supported by probable cause. The district court denied that motion and a motion for reconsideration.

Shortly before trial, the government produced cellphone data that police had seized from one of Bradley's phones. At trial, a jury convicted Bradley on all counts. In January 2024, Bradley moved to reopen his suppression hearing. The court denied the motion. Bradley filed another such motion in September 2024, three days before his sentencing hearing. The court denied that motion and struck it from the record. The court then sentenced Bradley to 210 months in prison. This appeal followed.

II.

A.

Bradley challenges the district court's denial of his motion to suppress. We review the district court's factual findings for clear error and its legal conclusions de novo, viewing the evidence in the light most favorable to the court's decision. *See United States v. Russell*, 26 F.4th 371, 374 (6th Cir. 2022). Our review of the state judge's decision to grant the warrant is likewise deferential. *See United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013).

Bradley argues that the police lacked probable cause to search the Nicholas Place house. Probable cause for a search warrant exists when there is a "fair probability that the specific place to be searched contained the specific things to be seized." *United States v. Sheckles*, 996 F.3d 330, 340 (6th Cir. 2021). A drug dealer's "status alone" is not enough to establish probable cause to search his residence. *United States v. Reed*, 993 F.3d 441, 448 (6th Cir. 2021). But the government has grounds to search a known drug dealer's residence when the dealer is "engaged in continual and ongoing operations typically involving large amounts of drugs." *United States v. Sanders*, 106 F.4th 455, 466 (6th Cir. 2024) (en banc) (citation omitted). In these circumstances, a judge can "infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking." *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008). A warrant affidavit

fortifies this inference when it provides additional evidence connecting the dealer's operations to the residence. *See Sheckles*, 996 F.3d at 341-42.

Bradley was a known drug dealer engaged in continuous and ongoing trafficking operations. Three informants told police that Bradley sold cocaine and methamphetamine. Police corroborated these tips by using an informant to purchase drugs from Bradley twice. Bradley regularly updated this informant on his efforts to secure additional drug shipments. And Bradley distributed these drugs in large quantities: he offered to sell one informant one pound of methamphetamine and reportedly sold a "half a brick" of cocaine to another.

Moreover, Bradley listed the house's address on his car registration, which gave police "good reason to think that [Bradley] had some substantial connection to that address." *United States v. Jones*, 817 F.3d 489, 491 (6th Cir. 2016). And when police conducted a controlled delivery of a methamphetamine package to the Nicholas Place house, Bradley walked out, picked up the package, and threw it in the trash can—hardly the behavior of a house guest. In addition, in the weeks leading up to the search, the police saw Bradley come or go from the house, including late at night.

Bradley asserts he no longer lived at Nicholas Place on the night of the search. Specifically, he says that his ex-girlfriend lived in the house, that he had broken up with her and moved out, and that he stayed there overnight only to visit his daughter. But Bradley cites nothing in the record that would have given the police any reason to make that distinction between resident and frequent overnight guest. And the Fourth Amendment requires officers to act only "reasonably," not "flawlessly." *United States v. Rohrig*, 98 F.3d 1506, 1524 (6th Cir. 1996).

Meanwhile, the warrant affidavit recited evidence linking Bradley's drug operation to the Nicholas Place house. For example, on the same night as the police search, Bradley called the informant from the house to arrange a drug sale, and told the informant—in code—that his methamphetamine shipment had arrived. This call yielded an inference that he used the house for his drug-related activities. *See Sheckles*, 996 F.3d at 342. In addition, more than once the police observed Bradley return to the home after drug transactions; and in one such transaction, Bradley received payment from the police informant for drugs. The police therefore had reason to think they would find proceeds and other drug-related evidence there. *See Sanders*, 106 F.4th at 463. The district court correctly denied Bradley's motion to suppress.

B.

Bradley argues that the district court should have reopened his suppression hearing. We review that decision for an abuse of discretion, bearing in mind that courts should be "extremely reluctant" to grant such motions. *See United States v. Pittman*, 816 F.3d 419, 424 (6th Cir. 2016) (cleaned up).

Bradley's argument is nearly frivolous. His underlying contention is that the government should have produced "extraction" data for one of his cellphones before his suppression hearing rather than after it. But Bradley's trial counsel undisputedly received that data from the government nearly a year before he brought his motion to reopen on that ground. And in the meantime, the court had conducted a trial in which a jury had convicted Bradley. Thus, to understate matters, his motion was untimely. *See id.* And Bradley's substantive argument to our court, at least, is meritless. Specifically, he says this data showed that two calls referenced in the warrant affidavit (between Bradley and the informant) "did not happen"—because those calls were not included in the data extracted from his phone. But Bradley's trial counsel more candidly

admitted that the absence of those calls from that data would not "change the outcome of the suppression issue"—because Bradley also had four other cellphones whose data the government could not extract. Finally, in support of his motion to reopen, Bradley makes in our court one factbound argument that he did not make to the district court. Suffice it to say that this argument, like his other ones here, does not remotely show that the district court abused its discretion in denying his motions.

*       *       *

The district court's judgment is affirmed.