**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0579n.06

No. 19-1108

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| **Plaintiff–Appellee,** | ) | Nov 26, 2019 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DAVID DEARIES RUNYON, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| **Defendant–Appellant.** | ) | |
| | ) | **OPINION** |
| | ) | |

BEFORE:  NORRIS, MOORE, and DONALD, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  David Runyon appeals the district court's denial of his motion to suppress evidence, arguing that the warrant to search his photography studio for drugs was not supported by probable cause and cannot be saved by the *Leon* good-faith exception.  We **AFFIRM**.

## I. BACKGROUND

On March 16, 2016, Grand Rapids police officer Ross VandenBerg—a member of the department's "Vice Unit"—applied for a warrant to search a photography studio located at 12 Leonard Street NW, Grand Rapids, Michigan.  The warrant authorized the seizure of cocaine, firearms, and anything else associated with drug trafficking.  VandenBerg's belief that these items would be found at this location was based primarily on the following three facts, which he set forth in an affidavit attached to his search warrant application:

(1)  A "reliable and credible" police informant, titled "#1228," told VandenBerg, in person, that he "had been at [the studio at 12 Leonard Street] within the last 48 hours" and had "observed a quantity of cocaine being sold there" by a person named "David Dearies Runyon."

(2)  At the time informant #1228 left the studio, Runyon still had cocaine on the premises for sale.

(3)  Informant #1228 had "been known to the Vice Unit for over two years," "ha[d] made at least 8 controlled purchases of controlled substances," and "ha[d] supplied information on numerous drug traffickers in the community," which VandenBerg had "verified . . . through police records, personal observations, other police officers, and other reliable informants."

R.15-1 (VandenBerg Aff. in Support of Search Warrant) (Page ID #48–50).[1]  A state magistrate promptly approved VandenBerg's warrant.  And, later that day, Grand Rapids police executed the warrant.

Once inside the studio, the police discovered cocaine, marijuana, and two illegal firearms, among other items.  R.57 (Final Presentence Investigation Report ("PSR") at 6) (Page ID #273).  Although Runyon denied knowing about one of the two firearms, *id*. at 8 (Page ID #275), there is no dispute that the other items were in his "possession."[2]

Federal prosecutors subsequently charged Runyon with being a felon in possession of a firearm and with possessing a controlled substance.  The former charge was particularly notable because, due to Runyon's criminal history, it carried with it a 15-year mandatory minimum

---

[1]The affidavit also included generalized information about VandenBerg's training and experience, and about the use of cell phones in drug trafficking.  However, because that information is not relevant to the Fourth Amendment question before us and is not emphasized in the parties' briefing, we do not discuss it here.

[2]There is also no dispute that the photography studio in fact belonged to Runyon.

sentence. *See* 18 U.S.C. § 924(e)(1) (requiring such a sentence for any person with three prior "violent felony" or "serious drug offense" convictions).

In response, Runyon moved to suppress the evidence gathered by the police during their search of his studio, arguing that the search warrant was issued in violation of the Fourth Amendment's "probable cause" requirement, and that the "good faith" exception to suppression, set forth in *United States v. Leon*, 468 U.S. 897 (1984), does not apply. After entertaining oral argument, the district court denied Runyon's motion. R.51 (Suppression Hr'g Tr. at 18–24) (Page ID #222–28). Although the district court acknowledged that VandenBerg's affidavit was not "perfect," *id*. at 20 (Page ID #224), it reasoned that, because the informant's personal observations of Runyon had occurred within 48 hours of the request for the warrant, and because the informant had a specific track record of reliability and credibility, VandenBerg had probable cause to believe cocaine (and other indicia of drug trafficking) could be found at the photography studio. In the alternative, the district court ruled that, because the police acted "objectively reasonabl[y]" in relying on and executing the warrant, the *Leon* good-faith exception applied. *Id*. at 23–24 (Page ID #227–28).[3]

Runyon then pleaded guilty to both charges levied against him, on the condition that he be allowed to appeal the district court's adverse suppression ruling. The district court, in turn, sentenced Runyon to 188 months in prison, based largely on the mandatory-minimum sentencing scheme noted above. R.60 (Judgment) (Page ID #311). This appeal followed.

---

[3]Runyon filed a motion for reconsideration shortly thereafter, which the district court summarily denied. *See* R.32 (Order Denying Mot. for Reconsideration) (Page ID #94).

## II. DISCUSSION

We review for clear error the district court's findings of fact in connection with a motion to suppress, whereas we evaluate its legal conclusions de novo. *United States v. Crumpton*, 824 F.3d 593, 615 (6th Cir. 2016). However, "when judging the sufficiency of an affidavit to establish probable cause in support of a search warrant, we accord the magistrate's determination great deference." *Id.* (quotation omitted).

Before entering a person's home or property, and absent certain exceptional circumstances not at issue here, the government must obtain a warrant based "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. This provision of the Fourth Amendment exists to safeguard the people's right to "retreat into the home and 'there be free from unreasonable governmental intrusion.'" *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (quoting *Kyllo v. United States*, 533 U.S. 27, 31 (2001)). And, in recognition of this right's importance, the Supreme Court has long held that evidence collected in violation of the Fourth Amendment may be excluded from the criminal trial of the victim of the unlawful search. *See, e.g.*, *Mapp v. Ohio*, 367 U.S. 643, 648, 651 (1961) (deeming this "the exclusionary rule" and describing it as a "deterrent safeguard").

However, because being searched is different than being convicted, and because search warrants "are normally drafted by nonlawyers in the midst and haste of a criminal investigation," probable cause presents a less demanding standard than "proof beyond a reasonable doubt" or "preponderance of the evidence." *Illinois v. Gates*, 462 U.S. 213, 235–36 (1983) (quotation

omitted).    Rather, all that is required is a "fair probability," based upon "the totality of the circumstances," that "evidence of a crime will be located on the premises of the proposed search." *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018) (quotations and citations omitted).  This is a "practical," "common-sensical" inquiry.  *Florida v. Harris*, 568 U.S. 237, 244 (2013).

Moreover, even if the police execute a search warrant based on something less than probable cause, evidence acquired as a result of that search is not necessarily excludable at trial. Rather, under the "good faith" exception to exclusion set forth in *United States v. Leon*, 468 U.S. at 913, such evidence is excludable only "(1) when the affidavit supporting the search warrant contains a knowing or reckless falsity; (2) when the magistrate who issued the search warrant wholly abandoned his or her judicial role; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; or (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid."  *United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir. 2006) (citation omitted).  This exception to the exclusionary rule exists because "the judge issuing a warrant—not the officer applying for one—has responsibility for determining whether probable cause exists." *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018).  There is therefore "little deterrent effect" to applying the exclusionary rule to law-enforcement officers who merely applied for a warrant in good faith, and who otherwise behaved in an "objectively reasonable" manner.  *Id.*

In applying these vague principles to the particular facts before us, three, more narrowly drawn, principles are of note, too.  First, "if a confidential informant—personally known by the [officer] to be reliable—allege[s] direct, personal observation of criminal activity, then the

[officer] [does] not have to include in the affidavit further corroboration of the informant's allegations." *United States v. Brown*, 732 F.3d 569, 574 (6th Cir. 2013) (citing *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc)). Second, for an informant to be sufficiently "reliable" under this first principle, the officer "need only specify that the confidential informant has given accurate information in the past." *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001). Third, if the sufficiency of an officer's affidavit "is a close question"—because the affidavit is notably similar to one affirmed by a prior precedent of this court—the *Leon* good-faith exception should generally apply. *United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005); *accord United States v. White*, 874 F.3d 490, 501 (6th Cir. 2017) (analogous reasoning).

A straightforward application of these principles, and the precedents from which they are drawn, resolves this case.

First, although Runyon is undoubtedly correct that Officer VandenBerg's affidavit is weak, and that Officer VandenBerg should have corroborated informant #1228's story by, for example, "execut[ing] a controlled buy," or "investigat[ing] records related to Mr. Runyon's possible relationship to the premises," Appellant's Br. at 14, our precedent squarely holds that such corroboration was not necessary under the circumstances. Consider *United States v. Brown*, 732 F.3d 569 (6th Cir. 2013). In that case, an officer (who also happened to work for the Grand Rapids Police Department) applied for, and received, a warrant to search a defendant's house for cocaine. The warrant was based largely on the fact that a "reliable" confidential informant had told the officer "that he had seen cocaine and what he considered to be drug dealing at [the defendant's] house." *Id*. at 572; *see also id*. at 576 (noting that the informant also detailed

"the quantities of drugs" he had seen and that the drugs "were in baggies"). The police executed the warrant and subsequently discovered cocaine and a handgun. The defendant moved to suppress that evidence, arguing that the officer's affidavit "totally failed to corroborate the informant's assertions about witnessing drug transactions at [the defendant's] house." *Id.* at 574. We rejected that argument, and held that, when "a confidential informant known to the officer to be reliable provide[s] first-hand, detailed observations of cocaine—as well as what appear[s] to be [the defendant] himself selling drugs—at [the defendant's] own house," the police do not need to "corroborate the confidential informant's observations by, for example, surveilling [the defendant's] home." *Id.*

Here, Officer VandenBerg's description of informant #1228's tip was hardly "detailed." However, informant #1228 did relay recent, "first-hand" observations of cocaine distribution by a particular person at a particular residence, and further confirmed that cocaine was still on the premises for sale after he left. Based on this information, it is hard to distinguish *Brown*, much less the confidential-informant cases upon which *Brown* relied, which presented even *less* detailed affidavits than the one presented here. *See, e.g.*, *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000) (en banc) (reliable informant told police he personally observed the defendant possess cocaine in his house within the last 72 hours; no independent corroboration necessary). Consequently, to secure probable cause to search Runyon's studio for drugs, Officer VandenBerg did not *need* to execute a controlled buy or inspect local property records (although the affidavit would have been far stronger had he done so).

Second, although Runyon is also undoubtedly correct that Officer VandenBerg should have provided more detail about his relationship with informant #1228, such as by noting *when* in the "last two years" informant #1228 had provided reliable information, Appellant's Br. at 14–15, our precedents likewise hold that that such detail was unnecessary under the circumstances. *Brown* is again illustrative. There, we held that the officer used sufficient detail to verify an informant's reliability when the officer attested, first, that the informant "had been used by [the Narcotics Enforcement Team] in numerous other investigations and provided information that ha[d] been corroborated and shown to be reliable by [the Narcotics Enforcement Team], the Michigan State Police and the Grand Rapids Police Department," and, second, that he (the officer) was "personally aware that [the informant] ha[d] provided information that has led to the prosecution and conviction of at least two federal defendants in the Western District of Michigan, as well as other persons convicted by Michigan authorities." *Brown*, 732 F.3d at 573. Our "clearly establishe[d]" precedent required nothing more, we ruled. *Id*. at 574. Because Officer VandenBerg provided equally detailed information here—for instance, by specifically noting that the Grand Rapids Vice Unit had worked with informant #1228 for "two years," that the Unit had relied on informant #1228's assistance for "eight controlled buys," and that Officer VandenBerg had confirmed informant #1228's reliability through, *inter alia*, "personal observation"—*Brown*, and the precedents upon which *Brown* relied, guide the outcome here, too. *See, e.g.*, *Greene*, 250 F.3d at 480 (officer "averred that the confidential informant had assisted federal and state law enforcement officials in the past and this information had resulted in numerous felony arrests"); *Allen*, 211 F.3d at 971 (officer averred that "I have known said informant for 5 years and said informant has given

me information about individuals involved in criminal activity in the past that has proven to be reliable"). As a result, probable cause was not lacking simply because Officer VandenBerg failed to provide more detailed information about his past work with informant #1228.

Third, and most importantly, even if Officer VandenBerg's affidavit did not provide "probable cause" to search Runyon's studio—and we need not definitively say if it did or not— this case falls in the very heartland of the *Leon* good-faith exception. *United States v. McCraven* is instructive. 401 F.3d 693. In that case, the police applied for, and received, a warrant to search a suspected drug dealer's home. *Id.* at 695. The affidavit supporting the warrant application was even sparser than the one here. It simply stated: "an informant who ha[s] previously given reliable information saw [the defendant] selling cocaine and marijuana inside his house." *Id.* at 698. This statement arguably failed to provide probable cause, we observed, because, although it was *similar* to affidavits we had approved in cases like *United States v. Allen*, it nonetheless failed to provide important details contained in those affidavits, such as statements about "the length of the relationship between the detectives and the informant" or about "the nature of the information provided by the informant in the past." *Id*. at 697. There was also "no suggestion that the detectives named the informant to the issuing judge." *Id*. Still, we held, because "the facts of *Allen* [did] not define the minimum requirements for an affidavit based on an informant's tip," and because "the sufficiency of the [at issue] affidavit [was] a close question" under those precedents, it seemed "obvious that the law-enforcement version of the hypothetical 'reasonable person'— *i.e.*[,] 'a reasonably well trained officer'—would not necessarily have known that the affidavit

supporting the warrant at issue here was insufficient, if in fact it was insufficient." *Id*. at 697–98. Accordingly, the *Leon* good-faith exception applied. *Id.* at 698.

The same logic holds true here. Although one could point out factual distinctions between this case and *Brown*, or this case and *Allen*—for instance, the affidavit in *Brown* included details about the exact "quantity of drugs" that are lacking here, 732 F.3d at 576, and the officer in *Allen* informed the magistrate of the confidential informant's real name, which Officer VandenBerg did not do here, 211 F.3d at 971—at the end of the day, this case is so close to our most on-point precedents that we cannot conclude that either "the affidavit [was] so lacking in indicia of probable cause that a belief in its existence [was] objectively unreasonable," or "the warrant [was] so facially deficient that it [could not] reasonably [have been] presumed valid." *McPhearson*, 469 F.3d at 525; *see* Appellant's Br. at 20 (arguing that *Leon* "factors three and four apply here"). Consequently, the district court did not err when it denied Runyon's suppression motion on the basis of *Leon*.

* * *

To close, we again emphasize that Officer VandenBerg's affidavit was weak, and that he should have put more effort into investigating informant #1228's tip than he did. Accordingly, this holding should not be understood as an open "invitation for investigators to draft—or for executing officers to rely upon—similarly threadbare affidavits." *United States v. Howard*, 632 F. App'x 795, 806 (6th Cir. 2015); *see also Allen*, 211 F.3d at 976 (discussing the "dangers" that can arise when police "fail[] to corroborate all that can easily be corroborated"). However, because

precedent controls the outcome of this particular decision, we need not say more about how far the exclusionary rule will bend to accommodate "similarly threadbare affidavits" in future cases.

### III.  CONCLUSION

For these reasons, we **AFFIRM** the district court's denial of Runyon's motion to suppress.